555 A.2d 208

**PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, Appellant,**

**v.**

**Millard A. FERTIG, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 6, 1988.

Filed March 6, 1989.

Thomas E. Brenner, Harrisburg, for appellant.

Robert W. Barton, Harrisburg, for appellee.

Before WIEAND, OLSZEWSKI and TAMILIA, JJ.

WIEAND, Judge:

The issue in this appeal is whether a no-fault insurance carrier is required to pay room charges in a nursing home where the insured, who is now a quadriplegic, is being maintained. The trial court entered a declaratory judgment in favor of the insured. We reverse.

On February 2, 1984, Millard A. Fertig was seriously injured when the stopped vehicle in which he was seated was struck in the rear by a moving vehicle. He sustained a traumatic subluxation of the third and fourth cervical vertebrae. Fertig was a patient at the Polyclinic Medical Center in Harrisburg from February 2, 1984 until April 19, 1984, when he was transferred to that institution's Memorial Building for further care. On June 8, 1984, Fertig was discharged to his home with special equipment and eight hour a day nursing care. His health deteriorated, however, and on August 26, 1984, he was admitted to the Community General Osteopathic Hospital, where he remained until September 3, 1984. On that date, Fertig was released from the hospital to Blue Ridge Haven East Nursing Home.

The insurance coverage on Fertig's vehicle was provided by Pennsylvania National Mutual Casualty Insurance Company (PNI). Pursuant to the provisions of the Pennsylvania No-fault Motor Vehicle Insurance Act,[1] PNI paid for all medical and rehabilitative care made necessary by the inju-

1. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. § 1009.101 et seq., repealed by Act of February 12, 1984, P.L. 26, No. 11, § 8(a), effective October 1, 1984.

ries sustained in the accident. In August, 1986, PNI filed an action for a declaratory judgment to determine whether it had a continuing obligation to pay for Fertig's room at the nursing home. Having heard the case without a jury, the trial court found that all efforts to rehabilitate Fertig had come to an end but that his physical condition was such as to require continuing custodial care. The trial court held that PNI was required to pay for the insured's custodial care under the provisions of the No-fault Act. Post-trial motions were denied, and this appeal followed.

The trial court's findings of fact are supported by the evidence. Dr. Eduardo S. Violago, a rehabilitation specialist who had examined Fertig and reviewed his records, testified that Fertig was no longer a candidate for rehabilitation but continued to need the maintenance and supportive care which were being provided by the nursing home. Dr. Richard Jeffries, the insured's treating physician, and Valerie Spenser, director of physical therapy at the nursing home, said that rehabilitative services had been stopped, but that support and maintenance care continued to be necessary.

An allowable expense is defined by Section 103 of the No-fault Act, 40 P.S. § 1009.103, as follows:

"'**Allowable expense**' means reasonable charges incurred for, or the reasonable value of (where no charges are incurred), reasonably needed and used products, services, and accommodations for:

"(A) professional medical treatment and care;

"(B) emergency health services;

"(C) medical and vocational rehabilitation services;

"(D) expenses directly related to the funeral, burial, cremation, or other form of disposition of the remains of a deceased victim, not to exceed one thousand five hundred dollars ($1,500); and

"The term does not include that portion of a charge for a room in a hospital, clinic, convalescent, or nursing home, or any other institution engaged in providing nursing care and related services, in excess of a reasonable

and customary charge for semiprivate accommodations, unless more intensive care is medically required; or any amount includable in work loss, replacement services loss, or survivor's loss.

. . . .

" '*Medical and vocational rehabilitation services*' *means services necessary to reduce disability and to restore the physical, psychological, social, and vocational functioning of a victim.* Such services may include, but are not limited to, medical care, diagnostic and evaluation procedures, physical and occupational therapy, other necessary therapies, speech pathology and audiology, optometric services, nursing care under the supervision of a registered nurse, medical social services, vocational rehabilitation and training services, occupational licenses and tools, and transportation where necessary to secure medical and vocational rehabilitation services. A basic loss obligor is not obligated to provide basic loss benefits for allowable expense for medical and vocational rehabilitation services unless the facility in which or through which such services are provided has been accredited by the Department of Health, the equivalent governmental agency responsible for health programs, or the accrediting designee of such department or agency of the state in which such services are provided, as being in accordance with applicable requirements and regulations. (emphasis added).

In *Reilly v. Southeastern Pennsylvania Transportation Authority,* 507 Pa. 204, 489 A.2d 1291 (1985), where the plaintiff also had suffered quadriplegia, the Supreme Court held:

Under the No–Fault Act, 40 P.S. § 1009.103, costs for medical and vocational rehabilitative services are recoverable from the no-fault carrier if two conditions are met. First, the services provided the victim must be necessary to **reduce** his disability and to **restore** his physical, psychological, social and vocational functioning. Secondly, the services must be rendered by a facility accredited by

the Department of Health, an equivalent governmental agency, or the accrediting assignee of the Department or agency.

Services which do not reduce the disability of the victim or restore his functioning, being custodial in nature, would not be recoverable under the No–Fault Act and, thus, would be included in a damage award.

*Id.*, 507 Pa. at 228–229, 489 A.2d at 1303.

Appellee contends that the holding of the Supreme Court in *Reilly* was based solely on an interpretation of the phrase "medical and vocational rehabilitation services." He concedes that custodial care in a nursing home is not recoverable as "vocational rehabilitation services." He argues, however, that such costs are necessary because of the insured's "medical condition" and, therefore, are recoverable as "professional medical treatment and care." We reject this argument.

Although it is correct that in *Reilly* the Supreme Court did not specifically address subsection 103(A) of the No-fault Act, the holding of the Court was not limited in any discernible way. There, as in the instant case, the injured plaintiff had achieved maximum recovery; his injuries had been reduced as much as possible, and he had reached a plateau. His care in the nursing home, as here, had been custodial. It had not been in the nature of medical treatment intended to reduce disability or restore body functions but was intended to provide maintenance and support of a quadriplegic person. Because the care being given by the nursing home was custodial in nature, the Supreme Court held, it was not recoverable under the No-fault Act.

The decision of the Supreme Court in *Reilly* is determinative of the instant appeal. Appellee is receiving custodial care in the nursing home and not medical treatment. The cost of custodial care is not recoverable under the No-fault Act.

REVERSED.

OLSZEWSKI, J., files a dissenting statement.

OLSZEWSKI, Judge, dissenting:

I respectfully dissent. It is my considered judgment that the costs subject to this proceeding are necessary because of the insured's "medical condition" and, therefore, are recoverable as "professional medical treatment and care."