585 A.2d 1109

**OHIO CASUALTY INSURANCE COMPANY, Appellant,**

v.

**Charles L. SPENCE, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 13, 1990.

Filed Feb. 1, 1991.

Peter J. Hoffman, Philadelphia, for appellant.

Eric S. Plaum, Philadelphia, for appellee.

Before MONTEMURO, TAMILIA and HOFFMAN, JJ.

MONTEMURO, Judge:

As appellee, Charles Spence, was getting into his car on December 12, 1984, he was struck by an automobile driven

8

by an uninsured drunk driver and was thereby rendered a permanent quadriplegic. Appellant Ohio Casualty Insurance Company ("Ohio Casualty") provided the insurance coverage on Spence's automobile in accordance with the Pennsylvania No–Fault Motor Vehicle Insurance Act[1]. Pursuant to § 203(b) of the No–Fault Act, Spence had elected that his private health care carrier (Blue Cross/Blue Shield) would be the primary provider of his basic loss benefits. Thus, Ohio Casualty, as the no-fault provider, has paid for those medical and rehabilitative care expenses which have exceeded the collectible benefits from Blue Cross/Blue Shield.

From the date of his accident in December, 1984 until June, 1986, Spence was treated as an in-patient at various hospitals and rehabilitation centers. Since June 1986, Spence has resided in his sister's home which has been modified to accommodate Spence's wheelchair and other needs. Spence's quadriplegic condition necessitates certain licensed practical nurse services, nursing aide services and related care from other health care providers. Specifically, Spence requires daily care to treat and prevent infection of his bowels, urinary tract system and bed sores. These services may be properly classified as life-sustaining, for without this care, Spence would develop complications such as an impacted bowel and toxic urinary sepsis, which could be fatal if left unattended.

In August, 1989, Ohio Casualty filed this action for a declaratory judgment, seeking a determination that according to this Court's interpretation of the No–Fault Act set forth in the case of *Pennsylvania National Mutual Casualty Insurance v. Fertig*, 382 Pa.Super. 335, 555 A.2d 208 (1989), *appeal granted* 571 A.2d 384, 524 Pa. 622 (1990), Ohio Casualty is no longer obligated to pay for Mr. Spence's medical treatment which is being rendered by the trained professional personnel described above. After the parties

1. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. § 1009.101 et seq., repealed by Act of February 12, 1984, P.L. 26, No. 11, § 8(a), effective October 1, 1984.

submitted the case to the trial court on a stipulation of facts, the trial court found that *Fertig, supra,* did not control this case and that Spence's medical expenses are "allowable expenses" under § 103(A) of the No–Fault Act. Following denial of post-trial motions, Ohio Casualty brought this appeal.

The sole issue on appeal is whether the home-administered health care being rendered to Mr. Spence by the trained health care providers are allowable expenses under § 103(A) of the No–Fault Act. Section 103(A) of the Act provides:

> **"Allowable expense"** means reasonable charges incurred for, ..., reasonably needed and used products, services, and accommodations for:
>
> (A) professional medical treatment and care; ...
>
> *   *   *   *   *   *

40 P.S. § 1009.103(A). The Act does not further define "professional medical treatment and care." The dispute here centers on whether the services being provided to Spence constitute professional medical treatment and care.

Ohio Casualty relies on *Fertig, supra,* where this Court held that the no-fault insurance carrier was not required to pay room charges in a nursing home where the insured, a quadriplegic, lived. *Fertig, supra,* 382 Pa.Superior Ct. at 339, 555 A.2d at 210. The evidence in *Fertig* showed that the insured had reached the maximum level of recovery and was no longer a candidate for rehabilitative services, but was in need of the maintenance and support provided by the nursing home. The *Fertig* court found the case of *Reilly v. Southeastern Pennsylvania Transportation Authority,* 507 Pa. 204, 489 A.2d 1291 (1985) to be directly controlling. In *Reilly,* the Supreme Court discussed what constitutes "medical and vocational rehabilitation services" within § 103(C) of the Act and concluded that the cost of custodial services provided by the Woods School where the quadriplegic plaintiff resided were not recoverable as medical and vocational rehabilitative services from the no-fault carrier. Thus, the plaintiff could recover these costs as special

damages from the tortfeasors. *Id.*, 507 Pa. at 228–34, 489 A.2d at 1303–1306. Although in *Reilly* the supreme court did not cite or discuss § 103(A) of the No–Fault Act, the *Fertig* court nevertheless concluded that under the holding in *Reilly,* custodial nursing home charges were not recoverable under § 103(A) of the Act.

We disagree with Ohio Casualty that *Reilly* and *Fertig* control the outcome of this case. Although similarities exist between this case and the *Reilly* and *Fertig* cases insofar as Mr. Spence has stopped receiving rehabilitation therapy and has achieved the maximum level of orthopedic and neurological improvement that he can be expected to attain during his lifetime, the record shows that Spence continues to receive medical treatment from trained professionals for complications resulting from his quadriplegia. The absence of the bowel and bladder care could prove to be fatal to Mr. Spence. There is nothing in *Reilly* and *Fertig* that indicates that the insureds were receiving the kind of treatment which Spence requires. *Reilly* and *Fertig* concerned whether the no-fault carrier was responsible for institutional charges for room and board. We find that the instant case poses a different question, as Ohio Casualty seeks to deny the cost of Spence's necessary medical treatments, not charges for room and board at an institution.[2]

We have no hesitation in agreeing with the trial court that the treatment Spence continues to receive falls within the plain meaning of the phrase "professional medical treatment and care" under section 103(A) of the No–Fault Act. We agree with the trial court that

> [t]he common definition of professional medical treatment and care would include the services which are being

2. Ohio Casualty states in its brief that the only difference between this case and *Fertig* is that "Mr. Fertig's bowel, bladder and decubiti (bed sore) care was accomplished by the nursing staff of the nursing home and included in his room and board charge, whereas the identical custodial care Mr. Spence receives is administered in his home by nursing personnel." Brief for Appellant at 9. We have carefully read *Fertig* and have found nothing which indicates that the room and board charges included expenses for bowel, urinary tract system and decubiti care.

rendered to the Defendant, including the bowel program, urinary tract program and the decubiti care. The Defendant is receiving a course of therapy prescribed by his physicians which is being administered at his residence which can be categorized as medical treatment which restores his bodily functions and is of a life-sustaining nature. As such, these expenses are clearly recoverable from the Plaintiff under the No–Fault Act as "allowable expenses" for professional and medical treatment and care.

Trial Court Opinion 3–4.

Ohio Casualty argues that because Mr. Spence's recovery has plateaued and further nursing services will neither rehabilitate him nor restore his bodily functions to their pre-accident state, the services do not fall within the meaning of "medical treatment" under the No–Fault Act. Brief for Appellant at 16. We decline to accept Ohio Casualty's proposed reading of the term "professional medical treatment," as their interpretation equates § 103(A) of the Act, dealing with medical treatment and care, with § 103(C) of the Act, dealing with medical and vocational rehabilitation services. The Act defines "medical and vocational rehabilitation services" as "services necessary to reduce disability and to restore the physical, psychological, social, and vocational functioning of a victim...." 40 P.S. § 1009.103. Thus, Ohio Casualty's suggested definition of "professional medical treatment and care" mirrors the Act's definition of "medical and vocational rehabilitation services," in effect robbing § 103(A), "professional medical treatment and care," of any independent meaning. This interpretation violates the basic canon of statutory interpretation which holds that "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S.A. § 1921(a). We do not believe that our Legislature intended § 103(A) of the Act to be mere surplusage.

For the foregoing reasons, we affirm the order of the trial court.

Order affirmed.