601 A.2d 797

**William L. DRAKE, Executor of the Estate of Millard A. Fertig, Deceased, Appellant,**

v.

**PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, Appellee.**

Supreme Court of Pennsylvania.

Argued May 7, 1991.

Decided Jan. 13, 1992.

Robert W. Barton, Harrisburg, for appellants.

David L. Lutz, Harrisburg, for amicus curiae.

Thomas E. Brenner, Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This case involves the interpretation of the Pennsylvania No–Fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, 40 P.S. § 1009.101 *et seq.* Although the statute was repealed on October 1, 1984, by its successor, the Motor Vehicle Financial Responsibility Law, Act of February 12, 1984, P.L. 26, No. 11, 75 Pa.C.S. § 1701 *et seq.,* the terms of the No–Fault Act still control the obligations of insurers of victims of serious accidents which occurred while the act was in effect and who still suffer from injuries received in those accidents. The issue is whether the cost of custodial medical and nursing care required because of the medical condition caused by accident injuries is an allowable expense under a no-fault auto insurance policy. The trial court held that the insurer, Pennsylvania National Mutual Casualty Insurance Company (PNI), was liable for the cost of the victim's custodial care under section 103 of

the No–Fault Act, 40 P.S. § 1009.103, even though the victim was no longer a candidate for rehabilitation. The Superior Court reversed, holding that *Reilly by Reilly v. SEPTA,* 507 Pa. 204, 489 A.2d 1291 (1985), excluded such treatments from expenses to be borne by no-fault insurers. *Pennsylvania National Mutual Casualty Insurance Co. v. Fertig,* 382 Pa.Super. 335, 555 A.2d 208 (1989).

On February 2, 1984, appellant's decedent, Millard Fertig, was injured when the automobile he was driving was struck from behind by another vehicle. Mr. Fertig suffered serious spinal injuries and was rendered quadriplegic. He received in-patient hospital care for more than two months following the accident, then was released to his home with special equipment and nursing care, but on September 3, 1984, returned to a nursing home where he remained until his death on August 20, 1989.

Mr. Fertig's automobile was insured by appellee, PNI. While paying all the costs of Mr. Fertig's medical treatments, PNI filed a declaratory judgment action on August 25, 1986, seeking judicial determination of its obligations under the insurance contract. Specifically, PNI sought a declaration that it was not liable for the room charge for Mr. Fertig in the nursing home.

. PNI's theory was that Mr. Fertig was receiving only custodial care at the home rather than medical or rehabilitative treatment. PNI argued that *Reilly by Reilly v. SEPTA, supra,* relieved a no-fault insurer from the obligation to pay for custodial care. PNI presented the testimony of two physicians and the director of physical therapy services at Mr. Fertig's nursing home, who all agreed that he had reached the point where he was no longer a candidate for physical therapy and was receiving only maintenance and supportive care. Nevertheless, one of the doctors testified that Mr. Fertig needed periodic review of his bladder and bowel disfunctions, that he required skilled nursing care or his condition could regress, and that even though he was not a candidate for rehabilitation he needed "medical care and nursing care because of his condition." The trial court

found that Mr. Fertig's care at the nursing home was *"because of his medical condition,"* slip op. at 2 (emphasis in original), concluded that such care was the obligation of a no-fault insurer, and ordered PNI to pay all of Mr. Fertig's charges at the nursing home.

██ On appeal, the Superior Court reversed, holding that *Reilly* negated the duty of a no-fault insurer to pay for custodial expenses. The Superior Court quoted from this court's decision: "Services which do not reduce the disability of the victim or restore his functioning, being custodial in nature, would not be recoverable under the No–Fault Act...." 382 Pa.Super. at 339, 555 A.2d at 209, quoting *Reilly,* 507 Pa. at 229, 489 A.2d at 1303. We granted allocatur to consider whether such custodial care might be "medical care" payable by the insurer as an allowable expense under 40 P.S. § 1009.103, even though *Reilly* held it was not the responsibility of the insurer because it was not "rehabilitation" under § 103.

Appellee PNI, of course, argues that *Reilly* controls this case, and that the quoted holding should not be limited. Hence, PNI claims that Mr. Fertig's care, which was custodial in nature, is not recoverable under the No–Fault Act, and the order of the Superior Court should be affirmed. Appellant, on the other hand, argues that the trial court's finding that Mr. Fertig's care, necessary *"because of his medical condition,"* is a finding that the care was not custodial but was "professional medical treatment and care" which is recoverable as an allowable expense. Finally, amicus curiae, the Pennsylvania Trial Lawyers Association, argues that custodial care, despite the language of *Reilly,* should be recoverable if it is necessary because of accident injuries.

Appellee's argument is based entirely on evidence that Mr. Fertig's treatment was custodial, together with the statement in *Reilly* that custodial care is not recoverable under the No–Fault Act, and this was the justification given by the Superior Court for its decision. We conclude that the Superior Court erred in reversing the trial court.

Due to the reliance placed thereon, it is important to understand the *Reilly* decision and the context in which this court stated that custodial care was not recoverable under the No–Fault Act. Reilly was a minor who was struck by an automobile after he alighted from a SEPTA bus. He suffered widespread and permanent injuries which rendered him a quadriplegic. By his parents, he sued SEPTA, the bus driver, and the owner and driver of the automobile which struck him. One of the issues in the case was whether the services provided to Reilly at the institution where he was permanently confined in a wheelchair were custodial or rehabilitative in nature. The trial court's jury charge, reviewed in its entirety, revealed that the jury was properly instructed that it could accept or reject the evidence as to Reilly's physical needs and that the services were custodial in nature, and that if the jury found the services to be custodial, it should award damages for the services. The jury awarded damages against SEPTA, the bus driver, and the driver of the car.

On appeal, the issue was whether or not the trial court had erred in ruling, as a matter of law, that Reilly's institutional care was custodial rather than rehabilitative and thus recoverable from the tortfeasors rather than his no-fault insurer. This court held that the Superior Court had erred, misshaping and misreading the record, in holding that the trial judge had improperly usurped the jury's function in finding the care to be custodial. In fact, the trial court's charge had properly submitted the issue to the jury.

Two significant factors distinguish *Reilly* from this case. First, the precise issue in *Reilly* was a challenge to the jury charge, questioning whether it permitted the jury sufficient latitude to determine whether Reilly's care was custodial or rehabilitative. A more important distinction, closely related to the first, is that the issue in *Reilly* was presented simply as a dichotomy under the statutory definition of "medical and vocational rehabilitation services": was Reilly's care rehabilitative or was it not? If it was not rehabilitative but

only custodial, then it was not recoverable as "medical and vocational rehabilitation services." It was never suggested that custodial, non-rehabilitative care might nonetheless be "medical care" recoverable from a no-fault insurer as another type of allowable expense, namely "professional medical treatment and care." That alternative was not argued, nor was it considered or decided by this court. In short, the *Reilly* court did not hold that custodial care could not be "professional medical treatment and care," one type of allowable expense under § 103, but only that custodial care was not "medical and vocational rehabilitation services," a second type of allowable expense under § 103. The *Reilly* decision, therefore, does not provide authority for the Superior Court's disposition of this case.

The emphasis placed on the term "custodial" by the Superior Court and by appellee is misleading, despite the use of the term in the *Reilly* opinion of this court. The term is not used in the No–Fault Act, nor in appellee's insurance policy with Mr. Fertig, nor in the Pennsylvania Code regulations pertaining to no-fault insurance. In order to determine Mr. Fertig's entitlement to the challenged expenses for nursing home accommodations, we must examine the No–Fault Act and the insurance policy issued by PNI to Mr. Fertig pursuant to the act.

The No–Fault Act defines "allowable expense" in relevant part as follows:

"**Allowable expense**" means reasonable charges incurred for, or the reasonable value of (where no charges are incurred), reasonably needed and used products, services, and accommodations for:

(A) professional medical treatment and care;

(B) emergency health services;

(C) medical and vocational rehabilitation services;

(D) expenses directly related to the funeral, burial, cremation, or other form of disposition of the remains of a deceased victim, not to exceed one thousand five hundred dollars ($1,500); ...

The statute defines "medical and vocational rehabilitation services" as follows:

> "Medical and vocational rehabilitation services" means services necessary to reduce disability and to restore the physical, psychological, social, and vocational functioning of a victim. Such services may include, but are not limited to, medical care, diagnostic and evaluation procedures, physical and occupational therapy, other necessary therapies, speech pathology and audiology, optometric services, nursing care under the supervision of a registered nurse, medical social services, vocational rehabilitation and training services, occupational licenses and tools, and transportation where necessary to secure medical and vocational rehabilitation services. . . .

40 P.S. § 1009.103. In interpreting the act, this court has consistently held, in keeping with 1 Pa.C.S. § 1928(c) (liberal construction of statutes), that the No–Fault Act must be liberally construed to effectuate its purposes, erring in favor of coverage for the insured in close or doubtful cases. *Motley v. State Farm Mutual Automobile Insurance Co.*, 502 Pa. 335, 466 A.2d 609 (1983); *Allstate Insurance Co. v. Heffner*, 491 Pa. 447, 421 A.2d 629 (1980). The purpose of the No–Fault Act was to establish "a Statewide system of prompt and *adequate* basic loss benefits for motor vehicle accident victims. . . ." Moreover, it was the intent of the legislature to guarantee that accident victims "receive prompt and *comprehensive* professional treatment." 40 P.S. §§ 1009.102(b) and 1009.102(a)(9)(A) (emphasis added). With these principles in mind, we examine the statute to determine Mr. Fertig's entitlement to payment for the nursing home accommodations.

█ It is readily apparent from the statute that the cost of accommodations is covered if the accommodations are necessary for the provision of either "professional medical treatment and care" or "medical and vocational rehabilitation services." "Allowable expense means reasonable charges incurred for . . . reasonably needed and used products, services, *and accommodations for:* (A) professional

medical treatment and care; [and] (C) medical and vocational rehabilitation services...." 40 P.S. § 1009.103 (emphasis added). Thus, if Mr. Fertig's care was an allowable expense under the statute, then the room charges were covered as well.

Appellant concedes that custodial care is not "rehabilitation services" under the definition of allowable expense, and that *Reilly* precludes the insurer's liability therefor. It is argued, however, that entitlement for the cost of "professional medical treatment and care" may include medically necessary nursing services even if the services may be characterized as custodial. We agree. Title 1, Pa.C.S. § 1921(a) states: "Every statute shall be construed, if possible, to give effect to all its provisions." What is excluded under one section of a statute may be included under another provision of the same statute, and it is clear that allowance for "medical care" entitles an accident victim to additional and different payments than those provided under the allowance for "rehabilitation services."

The statute defines "medical and vocational rehabilitation services" in such a way that it does not include custodial care—the services must be "necessary to reduce disability and to restore the physical, psychological, social, and vocational functioning of a victim." 40 P.S. § 1009.103. By contrast, the statute does not define "professional medical treatment and care." Nevertheless, appellee PNI provides a useful definition in its standard no-fault insurance policy. The PNI policy, after defining "medical and vocational rehabilitation services" in terms identical to the statute, also states that the policy covers "reasonable charges incurred for necessary products, services and *accommodations* for professional medical treatment and care" and defines the latter phrase as follows: "this includes, but is not limited to, (1) *medical* and dental *services;* (2) prosthetic devices; (3) ambulance; [and] (4) hospital and *professional nursing services for* diagnosis, *care, and recovery...."* (Emphasis added.) The policy contains no exclusion for custodial care, nor does 31 Pa.Code § 66.102, which sets

forth a sample no-fault insurance policy, nor does the No–Fault Act itself.

Applying a liberal interpretation of the No–Fault Act, there is no question that Mr. Fertig's nursing home accommodations are payable by his no-fault insurer. For purposes of this case, we accept the contractual definition of "professional medical treatment and care" which includes precisely the care at issue in this case: "accommodations for ... medical ... services ... and professional nursing services ... for care and recovery." There is no exclusion for expenses related to medical and nursing care which is custodial, so long as it is necessary due to accident-related injuries. We hold, therefore, that Mr. Fertig's care is an obligation payable by PNI as an allowable expense under § 103 of the No–Fault Act as "professional medical treatment and care."

Inasmuch as the *Reilly* distinction between custodial and rehabilitative care is not controlling in this case and in view of our interpretation of "professional medical treatment and care" under the No–Fault Act, the order of the Superior Court must be reversed. Order reversed.

NIX, C.J., concurs in the result.

LARSEN, J., files a concurring opinion.

LARSEN, Justice, concurring.

I join the majority opinion with the clear understanding that this matter has been adjudicated by the majority by statutory interpretation as opposed to contractual interpretation.