617 A.2d 790

Bernard E. GALLAGHER and Mildred B. Gallagher, his wife, Parents and Natural Guardians of Edward P. Gallagher

v.

HARLEYSVILLE MUTUAL INSURANCE COMPANY, Appellant.

Bernard E. GALLAGHER and Mildred B. Gallagher, Parents and Natural Guardians of Edward P. Gallagher, Appellants,

v.

HARLEYSVILLE MUTUAL INSURANCE CO.

Superior Court of Pennsylvania.

Argued March 12, 1992.

Filed Nov. 19, 1992.

Alexander Kerr, Philadelphia, for Harleysville Mut. Ins.

James J. Riley, III, Pottsville, for Bernard and Mildred Gallagher.

Before POPOVICH, HUDOCK and HESTER, JJ.

HESTER, Judge:

Harleysville Mutual Insurance Company appeals from judgment entered following the April 22, 1991 order denying post-trial motions filed following a jury award in favor of Bernard E. and Mildred B. Gallagher, in their capacity as guardians of their son, Edward P. Gallagher. The Gallaghers cross-appeal from an interim order granting a compulsory nonsuit against them on a breach of contract claim. For ease, we refer to Harleysville as appellant and the Gallaghers as appellees until we address the issue raised in the Gallaghers' cross-appeal. The issues presented in this appeal are: 1) whether a Pennsylvania insurer must provide benefits to a Maryland resident under section 201(b) of the Pennsylvania No-fault Motor Vehicle Insurance Act, 40 P.S. §§ 1009.101–.701 (repealed) (the "Act"), when the accident occurred in Maryland, which does not have a no-fault plan; 2) whether appellees are entitled to attorney's fees under the Act; 3) whether the trial court correctly defined for the jury the medical services that are compensable under the Act; and 4) whether the trial court erred in granting a compulsory nonsuit on a contract claim prior to trial.

Edward P. Gallagher, appellees' son, was injured seriously on October 29, 1977, while a passenger in a truck operated by Robert D. Bair, Jr. Edward was a resident of Maryland, where the accident occurred, and Bair was a resident of Pennsylvania, where his truck was registered. The truck was insured by appellant. Appellant paid in excess of $80,000 in medical benefits to appellees before it decided that the Act did not apply due to the fact that the accident occurred in Maryland and the injured party was a Maryland resident. Appellees, who have since moved to Pennsylvania, instituted this action on February 16, 1983, to compel resumption of

medical payments. Appellees' complaint also contained a count based on a contract allegedly entered into by the parties. Appellant counter claimed for benefits paid prior to termination. The parties filed cross-motions for summary judgment as to appellant's liability for payment under section 201(b) of the Act. The trial court granted judgment in favor of appellees, and the case was scheduled for a jury trial to determine whether certain medical services being provided to Edward were compensable. On April 21, 1986, prior to hearing or trial, the court, *sua sponte,* granted a "nonsuit" against appellees as to their contract count.

Jury trial commenced on July 21, 1986. The issue was whether medical services being provided to Edward by Re–Med Recovery Care Center ("Re–Med") were services necessary for maintenance and support of Edward and thus, non-compensable "custodial care" under the Act or whether the services were rehabilitative and compensable. The jury concluded that the services were not merely for maintenance and support but were rehabilitative. This appeal followed judgment entered on the jury award following denial of post-trial motions.

■ The provisions of the Act that are relevant to a determination of the first issue presented in this appeal include former section 201(b) of the Act, which provided:

*Accident outside this State.*—If the accident resulting in injury occurs outside of this Commonwealth, a victim or a survivor of a deceased victim is entitled to receive basic loss benefits if such victim was or is:

1) an insured; or

2) *the driver or other occupant of a secured vehicle.*

40 P.S. § 1009.201(b) (repealed) (Purdon's 1991 Supplement) (emphasis added). Also relevant is former section 110(c), which provided in relevant part:

The basic loss benefits available to any victim or to any survivor of a deceased victim shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance in effect in the state of domicile of the victim on

the date when the motor vehicle accident resulting in injury occurs. If there is no such state no-fault plan in effect or if the victim is not domiciled in any state, then basic loss benefits available to any victim shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance, if any, in effect in the state in which the accident resulting in injury occurs.

40 P.S. § 1009.110(c)(1) (repealed) (Purdon's 1991 Supplement).

In *Ropka v. Government Employees Insurance Co.,* 347 Pa.Super. 507, 500 A.2d 1171 (1985), we held that Maryland's legislation does not constitute a "no-fault plan" because it does not restrict the victim's right to bring a tort action to recover damages for his injuries. Thus, section 110(c) does not apply, and section 201(b), by its terms, allows recovery for Edward.

Attempting to avoid this statutory language, appellant offers the following argument. The Act, appellant notes, "focuses . . . on victims of *Pennsylvania* accidents." Appellant's brief at 12 (emphasis in original). Furthermore, appellant continues, the Act was based upon proposed uniform no-fault legislation that the drafters envisioned would be enacted in every state. If the uniform act had been adopted in every state as planned, section 110(c) would have applied herein, and this action would have been unnecessary. Appellant suggests that to apply section 201(b) to this situation, where the injury occurred outside of the Commonwealth and was sustained by a domiciliary of a state which does not have a no-fault plan, "would vitiate the policy" stated in section 102 of the Act, which is to take care of victims of Pennsylvania accidents.

Appellant's argument is unrealistic. Section 201(b) clearly covers accidents occurring *outside of the Commonwealth.* Edward's state does not have a no-fault plan. We fail to see the relevance of the fact that section 102, which contains the policy statement for the Act, "focuses" on Commonwealth accidents when section 201(b) specifically *covers* accidents occurring outside of the Commonwealth. Furthermore, every state did not enact a no-fault plan. We cannot premise a holding on envisioned events which did not occur. We also

view as irrelevant those cases relied upon by appellant that involve interpretations of other sections of the Act limiting recovery to victims of Pennsylvania accidents. Section 201(b) is clearly designed to provide coverage for victims of out-of-state accidents.

Appellant states that "[t]he fact that some states do *not* have no-fault plans, however, means that the statute as drafted does not address a situation like [appellees'] situation, where neither the domicile of the victim nor the accident site has a no-fault plan." Appellant's brief at 13–14. This argument is not supportable. Section 201(b) covers appellees' situation by allowing a party injured in an out-of-state accident to recover basic loss benefits against the insurer of the secured vehicle. *See Ropka v. Government Employees Insurance Co., supra* (since Maryland did not have no-fault plan, Maryland residents could recover under section 201(a) of the Act for an accident occurring in this Commonwealth irrespective of the fact that their insurance contract, written in Maryland, contained no such provision).

Along similar lines, appellant argues that courts interpret the Act as intending to preserve a non-domiciliary's "recourse to the laws of his domicile. *E.g. Swezey v. Home Indemnity Co.*, 691 F.2d 163, 167 n. 5 (3d Cir.1982)." Appellant's brief at 14. Appellant fails to acknowledge, however, that in the cited case, the non-domiciliary had recourse to a state no-fault plan. Here, the injured party has no such recourse, as determined in *Ropka*. He does have recourse to the normal Maryland tort system.

Finally, appellant suggests that "[n]owhere does the Act affirmatively authorize recovery of benefits by domiciliaries of states without no-fault plans who, like Edward Gallagher, are injured outside Pennsylvania's borders." Appellant's brief at 17. Again, we disagree. Section 201(b) does authorize such recovery; it simply fails to affirmatively exclude from recovery victims who are non-residents. Appellant would have us place the bracketed words in the statute:

*Accident outside this State.*—If the accident resulting in injury occurs outside of this Commonwealth, a victim or a

survivor of a deceased victim is entitled to receive basic loss benefits if such victim was or is: ...

1) an insured; or

2) *the driver or other occupant of a secured vehicle* [unless the occupant is a citizen of another state].

The result advocated by appellant would appear to be precluded by our decision in *Ropka.* Since the wording of the statute is clear, the letter of the statute cannot be disregarded under a pretext of pursuing its spirit of being primarily concerned with our citizen's interests. 1 Pa.C.S. § 1921(b). Accordingly, we reject appellant's interpretation and affirm the trial court's decision that coverage is provided.

It is of interest to here note that in *Greider v. Pennsylvania Assigned Claims Plan,* 316 Pa.Super. 146, 462 A.2d 836 (1983), Judge Wieand, writing for this court, held that "basic loss benefits are unavailable where an accident occurs outside the Commonwealth and neither the victim (a passenger), nor the vehicle in which the injury was sustained was insured." It would appear to follow, therefore, that in the event the vehicle was insured in Pennsylvania, the passenger-victim could collect basic loss benefits for injuries sustained in an accident occurring outside Pennsylvania.

■ Next, we address the propriety of the trial court's assessment of attorney's fees against appellant. The trial court determined that appellant's refusal of coverage had a reasonable foundation until *Ropka* was decided and until the jury decided that the medical services being provided to Edward by Re–Med were covered. It held that upon receipt of confirmation of time spent following the jury award on July 24, 1986, it would assess attorney's fees accordingly. Appellant contends that appellees are not entitled to recover any attorney's fees under the Act. In this case, we are asked to examine only section 1009.107(3) of the Act to determine whether appellees are entitled to attorney's fees. That section provided: "If, in any action by a claimant to recover no-fault benefits from the obligor, the court determines that the obligor has denied the claim or any significant part thereof

without reasonable foundation, the court may award the claimant's attorney a reasonable fee based upon actual time expended." 40 P.S. § 1009.107(3) (repealed) (Purdon's 1991 Supplement).

■ We recently interpreted this provision of the Act and concluded that it was intended to punish an insurer who either delays paying no-fault benefits or unreasonably denies a legitimate claim. *Freeze v. Donegal Mutual Insurance Co.*, 412 Pa.Super. 305, 603 A.2d 595 (1992). As a penal provision, we held that the section was to be strictly construed. While an insurer's denial is no longer reasonable once an appellate court decision fixes its obligation to pay, *Rago v. State Farm Mutual Automobile Insurance Co.*, 355 Pa.Super. 207, 513 A.2d 391 (1986), where the appellate court decision at issue does not address the precise, reasonable basis upon which insurer was denying benefits, attorney's fees are not warranted until that basis is rejected by the appellate courts. *Wingeart v. State Farm Mutual Automobile Insurance Co.*, 340 Pa.Super. 420, 490 A.2d 849 (1985).

Appellant's argument is that section 201(b) does not apply because the policy of the Act is to provide for Pennsylvania accidents or Pennsylvania residents, neither of which are at issue herein. While we must reject appellant's policy argument in light of the wording of the statute, we do not believe that appellant's position is so unreasonable as to warrant the imposition of attorney's fees. Furthermore, in *Ropka*, the accident occurred in Pennsylvania and thus the precise issue presented in this appeal was not decided in that case. Accordingly, we reverse the trial court's determination that attorney's fees are to be awarded to appellee.

Appellant next argues that the trial court did not instruct the jury properly on the issue of whether the services rendered by Re–Med to Edward are rehabilitative. Former sections 1009.404 and 1009.405 of the Act outlined the criteria for determining whether an insurer is required to pay for a particular treatment. In relevant part, those provisions stated that the treatment is covered if "it has contributed or will contribute substantially to rehabilitation." 40 P.S. §§ 1009.-404(b)(2), 1009.405(b)(2) (repealed) (Purdon's 1991 Supple-

ment). Under section 1009.103 of the Act, rehabilitative services were defined as "services necessary to reduce disability and to restore the physical, psychological, social and vocational functioning of a victim." Services that do not reduce disability or restore functioning are custodial in nature and not recoverable under the Act. *Reilly v. Southeastern Pennsylvania Transportation Authority,* 507 Pa. 204, 489 A.2d 1291 (1985).[1] The trial court instructed the jury in relevant part:

Under the No Fault Act, a person can recover for costs which qualify as allowable expenses. Allowable expenses are defined under the No Fault Act as the reasonable charges for reasonably needed and used medical and vocational rehabilitative expenses. In this case it is for you to determine what services qualify as allowable expenses under the No Fault Act. In determining whether the costs claimed here are covered by the No Fault Act, you should keep in mind that the act only allows recovery of allowable expenses, that is, those services which qualify as reasonably needed and vocational rehabilitative services.

*Services which are custodial in nature are not covered by the Pennsylvania No Fault Motor Vehicle Insurance Act* and may not be recovered in this lawsuit. Under the No Fault Insurance Act costs for medical and vocational rehabilitative services are recoverable from the No Fault carrier, Harleysville, in this case if two conditions are met. *First, the services provided to the victim must be necessary to reduce his disability and to restore his physical and psychological and social and vocational function.* In addition, in order to qualify as medical and vocational rehabilitative services, the services must be provided in a facility accredited by the responsible governmental agency as being in accordance with applicable requirements and regulations. . . .

R.R. at 382a–384a (emphasis added).

Appellant argues that the "charge did not enunciate criteria for determining what services constitute 'rehabilitative servic-

---

1. The *Reilly* decision has been overruled, as is discussed in more detail in footnote two.

es' clearly enough." Appellant's brief at 25. Appellant does not state in what particular the instructions were inadequate nor does it suggest what instruction the trial court should have given. Instead, it argues only that the "inadequacy of the jury charge at issue can best be appreciated by comparing Edward Gallagher's situation to that of the claimant in *Pennsylvania National Mutual Casualty Insurance Co. v. Fertig,* 382 Pa.Super. 335, 555 A.2d 208 (1989)." [2] Appellant's brief at 27. The victim in *Fertig* was a quadriplegic who was being cared for in a nursing home. In determining that the services were non-compensable custodial care, we stated in that case, "Services which do not reduce the disability of the victim or restore his functioning, being custodial in nature, would not be recoverable under the No–Fault Act...." *Id.,* 382 Pa.Super. at 339, 555 A.2d at 209.

We fail to comprehend appellant's argument. The charge at issue directly tracked the language of the statute and *Fertig.* Further, a comparison of the claimant in *Fertig* and Edward's situation supports the jury's determination that the services at issue are recoverable. Edward is not paralyzed and receives services at Re–Med which increase his functioning. Appellant apparently is dissatisfied with the jury's determination that Edward is receiving services that are recoverable under the Act; however, this determination is supported by the evidence, a fact which appellant does not contest. Appellant is attempting to transform an argument regarding the sufficiency of the evidence into an argument relating to jury instruction. However, the jury instructions were proper under the law in effect at the time.

Appellant argues secondarily that the trial court should have charged the jury that unless the increase in functioning

---

**2.** *Fertig* was reversed in *Drake v. Pennsylvania National Mutual Casualty Insurance Co.,* 529 Pa. 44, 601 A.2d 797 (1992). In *Drake,* our Supreme Court held that custodial services are compensable under section 1009.103 as an allowable expense of a professional medical treatment or care. The issue of whether custodial care is covered as an allowable expense under section 1009.103 was not raised by the Gallaghers, and we have therefore reviewed appellant's argument that the jury was improperly instructed as to the definition of covered services.

produced by treatment *survives* removal from the facility, it is not compensable. However, the statute contains no such restriction on recoverability. If the services have or will contribute to rehabilitation, they are covered, regardless of whether rehabilitation survives institutionalization. Furthermore, this argument is moot in light of *Drake v. Pennsylvania National Mutual Casualty Insurance Co., supra* n. 2.

■ In their cross-appeal, the Gallaghers argue first that the trial court erred in granting a nonsuit, prior to trial, on count two of their complaint, which sounded in contract. In count two, the Gallaghers sought to recover for certain services Edward received while at home. The Gallaghers alleged that an agreement existed between them and the insurer allowing them to remove Edward from a nursing home for approximately four years, when he was cared for in their home. The cost of this care was $107,200. The Gallaghers argue that Harleysville agreed to pay for these services, which were less than what it would have cost the insurer had Edward gone to an approved facility, such as Re–Med.

The Gallaghers argue that the order was improper because a nonsuit may be entered only after testimony has been taken under Pa.R.Civ.P. 230.1. Harleysville counters that the Gallaghers have waived this argument by failing to file post-trial motions to the compulsory nonsuit, as required by Rule 227.1, which provides, *inter alia,* that post-trial motions must be filed within ten days after nonsuit is entered. The Gallaghers filed a motion for reconsideration of the order five months after it was entered, following the jury award.

We agree that what the trial court did cannot be characterized as granting a nonsuit, which is entered under Rule 230.1 only after a plaintiff's evidence has been presented to the jury. The trial court's action is properly characterized as either a summary judgment grant or grant of judgment on the pleadings as to the count in contract. Thus, post-trial motions were not required under Rule 227.1, which provides, *inter alia,* that such motions may not be filed with respect to orders disposing of motions for judgment on the pleadings or for summary judgment or other proceedings that do not constitute a trial.

Since post-trial motions with respect to the order were not allowed, we disagree with Harleysville's position that the Gallaghers waived this issue by failing to file those motions.

In count two, the Gallaghers made the following allegation about what Harleysville agreed to pay. "The defendant, Harleysville, accepted coverage of this loss and warranted to the plaintiffs that it would pay all medical bills and other economic losses *under the policy of insurance in accordance with the Pennsylvania No–Fault Law.* A copy of the letter dated July 6, 1978, from Harleysville is attached hereto as Exhibit 'B'." Complaint at ¶ 18. Exhibit B indicates, as suggested by the allegations, that Harleysville agreed to pay for medical services covered by its policy, which comports with the requirements of the Act. Construing the allegations of the complaint and the contents of the supporting letter in the light most favorable to the Gallaghers, it is clear that Harleysville agreed to cover any medical services that are compensable under the Act. In light of our Supreme Court's recent decision in *Drake v. Pennsylvania National Mutual Casualty Insurance Co., supra* n. 2, we must reverse the order and remand for a determination of whether the services that were provided in the Gallaghers' home are compensable under the Act. We express no opinion on the matter since the nature of the services for which the Gallaghers seek recovery cannot be ascertained based on the record.

In accordance with the foregoing, the judgment is affirmed in part and reversed and remanded in part. Jurisdiction is relinquished.