**Taube v. Erie Insurance Exchange**

*Pamela G. Shuman,* for plaintiff.
*Thomas E. Brenner,* for defendants.

HESS, *J.,* February 3, 1993—This action was brought pursuant to the Pennsylvania No-Fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, no. 176, 40 P.S. §1009.101 et seq., repealed by Act of February 12, 1984, P.L. 26, no. 11, §8(a), effective October 1, 1984.[1] The complaint seeks payment for in home care for Thomas Taube who was catastrophically injured following a motor vehicle accident on July 31, 1982. The complaint alleges that the defendants have improperly refused to increase payments for medical care, and have, in fact, threatened to reduce first party medical benefits.

On April 27, 1992, we largely dismissed, by memorandum opinion and order, the defendants' preliminary objections to the complaint. We noted in the opinion that the plaintiff was given prior leave to amend the complaint to reflect the appointment of Jean Taube, the mother of Thomas, as guardian ad litem.

Now, following the closing of the pleadings and filing of depositions, the defendants move for summary judgment. We briefly note that further discovery has been stayed by our order dated December 8, 1992, pending the outcome of the summary judgment motion.[2]

---

1. The No-Fault Act still controls "the obligations of insurers of victims of serious accidents which occurred while the act was in effect and who still suffer from injuries received in those accidents." *Drake v. Pennsylvania National Mutual Casualty Insurance Company,* 529 Pa. 44, 45, 601 A.2d 797, 798 (1992).

2. Our order addressed the defendants' third motion for a protective order.

DISCUSSION

"Summary judgment is only appropriate where viewing all the facts in the light most favorable to the nonmoving party and resolving all doubts as to the existence of issues of material fact against the moving party, the moving party is entitled to judgment as a matter of law. *Vaskie v. West American Insurance Company,* 383 Pa. Super. 76, 79, 556 A.2d 436, 438 (1989)."

*Dorohovich v. West American Insurance Company,* 403 Pa. Super. 412, 419, 589 A.2d 252, 256 (1991). Summary judgment may be entered only in cases that are clear and free from doubt. *Elder v. Nationwide Insurance Company,* 410 Pa. Super. 290, 294, 599 A.2d 996, 998 (1991). In *Drake, supra,* the Pennsylvania Supreme Court provided guidance in our interpretation of the No-Fault Act:

"In interpreting the act, this court has consistently held, in keeping with 1 Pa.C.S. §1928(C) (liberal construction of statutes), that the No-Fault Act must be liberally construed to effectuate its purposes, erring in favor of coverage for the insured in close or doubtful cases. *Motley v. State Farm Mutual Automobile Insurance Co.,* 502 Pa. 335, 466 A.2d 609 (1983); *Allstate Insurance Co. v. Heffner,* 491 Pa. 447, 421 A.2d 629 (1980). The purpose of the No-Fault Act was to establish 'a statewide system of prompt and *adequate* basic loss benefits for motor vehicle accident victims....' Moreover, it was the intent of the legislature to guarantee that accident victims 'receive prompt and *comprehensive* professional treatment.' 40 P.S. §§1009.102(b) and 1009.102(a)(9)(A)." (emphasis in original) *Id.* at 50, 601 A.2d at 800-01.

With these principles in mind, the defendant first requests summary judgment as a matter of law, con-

tending that Mrs. Taube has failed to state a cause of action under the No-Fault Act for inadequate payments because she has failed to show any out-of-pocket loss. The defendant specifically argues that Mrs. Taube has not paid any additional monies, from her own funds, for her son's care, her current medical help has not requested an increase of pay and the defendants have not decreased the amount paid for custodial care.

In her complaint, Mrs. Taube is essentially asking for more money to allow her to obtain medically qualified personnel to care for her son because the current payments are inadequate for that purpose. Thus, on its face, it is irrelevant that she has not sustained an out-of-pocket loss or that her current help has not requested a raise or that Erie has not reduced its payments. The fact that Mrs. Taube has sustained no out-of-pocket loss shows only that she either has not chosen, or cannot afford, to retain medically qualified personnel out of her own income. Her current help may not expect more money because they are not qualified to receive more. Finally, the fact that the defendants maintained the current payment levels is not determinative of Mrs. Taube's present or future need.

The defendants point to section 106 of the No-Fault Act as requiring a "financial loss" as a prerequisite of this action. However, in section 106(a)(1) "[l]oss accrues not when injury occurs, but as *allowable expense* ... is sustained." (emphasis added) See also, section 103 definition of "loss." Allowable expense is defined as the "reasonable charges incurred for, or the *reasonable value of (where no charges are incurred),* reasonably needed and used ... services." section 103 (emphasis added) By its own language, "allowable expense" does not require an out-of-pocket loss. See *Dickson v. Federal*

*Kemper Insurance Company,* 23 D.&C.3d 102, 105 (1982). Instead, the definition covers the situation where, as here, the plaintiff is requesting the reasonable value of reasonably needed medical services, *i.e.,* qualified medical help.

Even though the complaint does not state a claim for Mrs. Taube's personal time and expenses in caring for her son both parties, but particularly the defendants, cannot resist the temptation to address it. We, however, find the temptation completely resistible. This case is complicated enough without our addressing the validity of claims that are not asserted.

Finally, the defendants have moved for summary judgment with regard to the plaintiff's cause of action for bad faith. We are not in a position, however, to make any final disposition of this motion. Our review of the complaint reveals that the bad faith claim, simply, has not been adequately pled. Specifically, the plaintiff has failed to allege bad faith conduct on the part of the defendants that postdates the effective date of Pennsylvania's bad faith statute.

Pennsylvania recognizes no common law action for bad faith against an insurer. *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Company,* 494 Pa. 501, 508, 431 A.2d 966, 970 (1981). As such, plaintiff's bad faith claim must necessarily rely upon the statutory basis of 42 Pa.C.S. §8371.[3] Section 8371 took effect

---

3. 42 Pa.C.S. §8371 provides as follows:

"In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions: (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3 percent; (2) Award punitive damages against the insurer; (3) Assess court costs and attorney fees against the insurer."

on July 1, 1990. In interpreting that section, courts have consistently held that it may be applied to an insurer's post-July 1, 1990, conduct even though the policy was issued prior to that date. See *e.g., Coyne v. Allstate Insurance Company,* 771 F. Supp. 673, 676 (E.D. Pa. 1991). However, in order to state a cause of action for bad faith under section 8371, the complaint must allege conduct on the part of the insurer occurring after July 1, 1990. *Seeger v. Allstate Insurance Company,* 776 F. Supp. 986, 987 (M.D. Pa. 1991); *American Franklin Life Insurance Company v. Galati,* 776 F. Supp. 1054, 1063 (E.D. Pa. 1991).

In the present case, plaintiff alleges that defendants acted in bad faith by threatening to cut off payments to the plaintiff based upon the Pennsylvania Superior Court decision in *Pennsylvania National Mutual Casualty Insurance Company v. Fertig,* 382 Pa. Super. 335, 555 A.2d 208 (1989), *rev'd, Drake v. Pennsylvania National Mutual Casualty Insurance Company,* 529 Pa. 44, 601 A.2d 797 (1992).[4] See plaintiff's amended complaint, paragraphs 15, 17, 29 and 33. Nowhere in the complaint, however, does the plaintiff aver that the defendants engaged in the alleged bad faith conduct subsequent to July 1, 1990, the effective date of 42 Pa. C.S. §8371. Though the bad faith claim has not been appropriately pled, we decline to grant the defendant's

---

4. In briefing the bad faith issue, plaintiff further alleged that the defendants acted in bad faith by failing to inform the insureds of the Superior Court's decision in *Ohio Casualty Insurance Company v. Spence,* 402 Pa. Super. 6, 585 A.2d 1109 (1991). See plaintiff's supplemental brief in opposition to defendants' motion for summary judgment at page 10. No allegation to this effect is contained anywhere in plaintiff's amended complaint. Consequently, this allegation will not be considered for purposes of ruling on the defendants' summary judgment motion.

summary judgment motion in this regard. The law is well established that a complaint ought not to be dismissed by virtue of a defective pleading, where the defect can be cured by amendment. *Bell v. Shetrom,* 214 Pa. Super. 309, 315, 257 A.2d 323, 326 (1969).

## ORDER

And now, February 3, 1993, the motion of the defendants for summary judgment is denied. The plaintiff is directed to file an amended complaint with respect to her bad faith claim within 30 days of the date of this order or suffer dismissal of that count of her complaint as of course.