582 A.2d 410

**WALKER PONTIAC, INC., Arnold Pontiac–GMC, Inc. and G.V.M. Pontiac, Inc., Petitioners,**

v.

**DEPARTMENT OF STATE, BUREAU OF PROFESSIONAL AND OCCUPATIONAL AFFAIRS, State Board of Vehicle Manufacturers, Dealers and Salespersons, Bob Cochran Motors, Inc., and General Motors Corporation, Respondents.**

Commonwealth Court of Pennsylvania.

Argued April 3, 1990.

Decided Oct. 12, 1990.

Reargument Denied Dec. 5, 1990.

D. Michael Fisher, with him, Daniel F. Cusick, Houston Harbaugh, Pittsburgh, for petitioner, Walker Pontiac, Inc.

Edward Zemprelli, Zemprelli, Clipper and Campedel, Clairton, for petitioner, G.V.M. Pontiac, Inc.

April L. McClaine, Counsel, State Bd. of Vehicle Mfrs., Dealers and Salespersons, with her, Joyce McKeever, Chief Counsel, Bureau of Professional and Occupational Affairs, and Pamella J. Raison, Chief Counsel, Dept. of State, Harrisburg, for respondent, State Bd. of Vehicle Mfrs., Dealers and Salespersons.

William R. Lauer, William R. Lauer Associates, Sewickley, for respondent, Bob Cochran Motors, Inc.

James A. Mollica, Jr., Meyer, Darragh, Buckler, Bebenek, Eck & Hall, Pittsburgh (William J. Whalen, of counsel), Detroit, Mich., for respondent, General Motors Corp.

Before McGINLEY and PELLEGRINI, JJ., and BARBIERI, Senior Judge.

PELLEGRINI, Judge.

Walker Pontiac, Inc. (Walker) and GVM Pontiac–GMC, Inc. (GVM) (collectively, Protesting Dealers) [1] petition this

---

1. Arnold Pontiac–GMC, Inc., while listed in the caption, has discontinued its appeal.

court for review of an order of the State Board of Vehicle Manufacturers, Dealers and Salespersons (Board). The Board's order dismissed a protest to the relocation of Bob Cochran Motors, Inc., trading as Bock and Walters (Cochran) from a location in Oakdale to Robinson Township; both locations are in Allegheny County.

Cochran purchased a small Pontiac dealership in Oakdale (Bock and Walters) and sought its transfer to a new location in Robinson Township, where Cochran was establishing a "mega dealership." This relocation is supported by General Motors Corporation (GM), the manufacturer of Pontiacs, who intervened in the proceedings before the Board.

The Protesting Dealers, after being notified by GM of the proposed relocation, filed a protest with the Board pursuant to Section 18(c) of the Board of Vehicles Act (Act), Act of Dec. 22, 1983, as amended, P.L. 306, 63 P.S. § 818.18(c) (Supp.1980)[2] objecting to the relocation. The Protesting Dealers contend that this relocation is unjustified under Section 18(c) because of their investments in their dealerships and because the relocation would not benefit consum-

**2.** Section 818.18(c) of the Act provides:

(c) Board to consider existing circumstances.—In determining whether good cause has been established for not entering into or relocating an additional new vehicle dealer for the same line-make, the Board shall take into consideration the existing circumstances, including, but not limited to:

(1) Permanency of the investment of both the existing and proposed new vehicle dealers.

(2) Growth or decline in population and new car registrations in the relevant market area.

(3) Effect on the consuming public in the relevant market area.

(4) Whether it is injurious or beneficial to the public welfare for an additional new vehicle dealer to be established.

(5) Whether the new vehicle dealers of the same line-make in that relevant market area are providing adequate competition and convenient customer care for the vehicles of the line-make in the market area which shall include the adequacy of the vehicle sales and service facilities, equipment, supply of vehicle parts and qualified service personnel.

(6) Whether the establishment of an additional new vehicle dealer would increase competition and whether such increased competition would be in the public interest.

(7) The effect the denial of relocation will have on a relocating dealer.

ers either by stimulating competition or by only satisfying customers' needs in sales, service and parts. Finally, they contend that the relocation would create great hardship to them without any corresponding benefits to consumers.

The Board dismissed this action, finding that Cochran's relocation would be beneficial to consumers in the relevant market area and would not cause a hardship or jeopardize the Protesting Dealers' investment. In their petition to this court, the Protesting Dealers assert that the Board applied the criteria contained in the Act incorrectly and critical findings were not supported by substantial evidence. The Protesting Dealers also contend that their entire hearing was tainted because of the improper recusal of a member of the Board, and they contend as well that the Board ruled incorrectly on discovery and evidentiary matters.

## I.

Prior to reaching the substantive issues, we will first address the issues regarding the propriety of the Board's conduct of the hearing.

### A. Williams' Recusal

After three days of hearings, one of the two Board members designated to conduct the hearing, William D. Williams, without explanation, did not return to the hearing. Subsequent to the Board's decision, the Protesting Dealers were informed that Williams recused himself at the request of the Board's counsel. The Board's counsel believed that a question Williams asked indicated a bias on Williams' part against General Motors.[3] The Protesting Dealers argue that Williams' recusal was not justified and improperly

---

3. The question that Mr. Williams asked that prompted counsel's request is:

MR. WILLIAMS: And how do you explain GM's position over the years of determining franchises or not renewing if they believe more dealers are better than fewer dealers? Do you believe they're contradictory in what they say and what they do?

THE WITNESS: Well, logically if—if GM is saying that more dealers are better than few and they're canceling dealers that's a contradiction.

tainted the entire hearing process, necessitating this court to assume the role of factfinder which they believe will result in the Board's decision being overruled.

Whether Williams' question was sufficient to justify the Board's counsel to request his recusal or whether counsel even had the right to make the request is problematic. Whether counsel's request was erroneous or overly cautious is a matter solely between Williams and counsel. Williams' decision to accede to Board counsel's request was his alone to make. Because Williams owed no explanation to the parties if he believed, for whatever reason, that he should not participate in the decision or hearing of this case, Williams could recuse himself from these proceedings without tainting them. What is more, his recusal could not so taint the proceedings to prompt this court either to remand the matter for rehearing or, even more unlikely, to assume the role of factfinder and review the matter de novo.

## B. Lack of Quorum

By a vote of eight in the affirmative, one abstention and Williams' recusal, the Board rendered its decision. The Protesting Dealers argue that because Williams recused and another member of the Board abstained, a quorum consisting of nine members of the Board did not exist as required by Section 3 of the Act, 63 P.S. § 818.3(c). Because a person abstaining still counts toward the quorum, nine members were present, not counting Williams. *DiGiacinto v. City of Allentown*, 486 Pa. 436, 439–440, 406 A.2d 520, 522 (1976).

## C. Failure to Subpoena Requested Information

The Protesting Dealers contend that the failure of the Board to issue a subpoena for production of documents relating to yearly sales, capital investments and vehicle mark-up of other Pontiac dealers in the relevant market area deprived them of relevant evidence to establish the relevant criteria set forth in Section 18(c) of the Act, 63 P.S. § 818.18(c). The General Rules of Administrative Practice and Procedure, 1 Pa.Code § 35.142, authorize the issuance

of subpoenas upon application of a party if the Board determines that the documents sought were relevant and material to the proceeding. The Board contends that the granting of the subpoenas is discretionary, and that it did not abuse its discretion in denying the subpoena for the records requested because those records were either confidential, accessible to the other party or not relevant.

Unlike privileged documents, there is no absolute bar to the issuance of a subpoena for the production of documents merely because those documents are confidential or contain trade secrets.[4] It is within a tribunal's discretion to require production, and if it orders production, a tribunal may restrict the information to be produced and may also designate the information to be produced. *Stern v. Vic Snyder, Inc.*, 325 Pa. Superior Ct. 423, 473 A.2d 139 (1984). *See also Centennial Spring Health Care v. Pennsylvania Department of Welfare*, 115 Pa.Commonwealth Ct. 450, 541 A.2d 806 (1988). Because the information was relevant, the Protesting Dealers argue that the Board erred in not ordering that those documents be produced. Establishing that the documents were relevant is not enough for the Protesting Dealers to show that the Board erred in not ordering their production. The Protesting Dealers had the additional burden of establishing either that the documents were not confidential or that the Board abused its discretion in not granting their request. Neither contention is advanced by the Protesting Dealers here. Nor did they advance such contentions before the Board. Consequently, the Protesting Dealers have failed to establish that the Board abused its discretion by not issuing a subpoena for the requested documents that purportedly contain confidential or trade secrets.

### D. Failure to Comply With Pre-Trial Order

By pre-trial Order, the Board required that all expert reports were to be exchanged among the parties prior to the

---

**4.** While not governing administrative agencies, Pa.R.C.P. 4012(a)(9) provides that it is within the discretion of the court to allow production of documents of this nature.

hearing. GM notified the Protesting Dealers that it intended to call a certain economist as an expert witness and that it might not be able to produce his report prior to the hearing as required by the Board's pre-hearing order. When GM called this expert witness, the Protesting Dealers timely objected to his being called on the basis that the Board's pre-trial Order required expert reports prior to the hearing. Overriding the Protesting Dealers' objections, the Board allowed the expert to testify, but then allowed the Protesting Dealers a two-week recess to prepare cross-examination of the expert or obtain other evidence to counter this testimony. The Protesting Dealers contend that the Board's decision in allowing this expert to testify constitutes an abuse of discretion.

In *Gill v. McGraw Electric Company*, 264 Pa.Superior Ct. 368, 382, 399 A.2d 1095, 1102 (1979), that court set forth factors as to determine whether it constituted an abuse of discretion on the part of a factfinder to allow the expert testimony where a witness had not been identified in the pre-trial statements:

(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the court's order.

Because the Board allowed the Protesting Dealers two weeks to prepare for cross-examination or obtain evidence needed to counter this witness' testimony, the Protesting Dealers were not prejudiced by the Board allowing GM's expert witness to testify.

## II.

The Protesting Dealers also raise a number of substantive arguments. They argue that the Board erred as a

matter of law in not considering the monopolistic effects of Cochran's acquisition of Bock and Walters in its definition of relevant market area. They also argue that the Board erred in its finding relating to the competition within the market area, as well as its finding that the Oakdale dealership would close if not relocated.

## A. Applicability of Federal Anti–Trust Principles

■ Because Cochran will have approximately thirty percent of the Pontiac car sales in the relevant market area as it is defined in the Board of Vehicles Act, the Protesting Dealers argue that the Board should have applied federal anti-trust principles to determine whether Cochran's relocation would have an unlawful monopolistic effect.[5] The Protesting Dealers contend that federal anti-trust principles are applicable because Cochran's acquisition and relocation of the Bock and Walters dealership is akin to a horizontal merger as defined under federal anti-trust laws. Under federal anti-trust principles, they contend that a thirty percent market share is anti-competitive. We believe that it is totally inappropriate to utilize federal anti-trust principles in a Board of Vehicle Act proceeding.[6]

The interests and policy considerations being advanced under federal anti-trust principles are substantially different from the policy considerations advanced in the Board of Vehicle Act. The Board of Vehicle Act was enacted to protect the interests of a particular class of dealers and consumers, while federal anti-trust principles are only interested in ensuring that there is competition. Federal anti-trust principles are not concerned with the effects of competition on a particular business, its capital investments or its employees. For that matter, these principles are not con-

5. In *Pennsylvania Automotive Association v. State Board of Vehicle Manufacturers, Dealers and Salespersons,* 121 Pa.Commonwealth Ct. 352, 550 A.2d 1041 (1988), we have previously held that the Board has no jurisdiction to hear Section 1 Sherman Act violations, 15 U.S.C. § 1.

6. Other federal protection is provided by the Automobile Dealers' Day in Court Act, 15 U.S.C. § 1221–1225.

cerned with the effects of competition, albeit, the policy consideration is that all are better served in the long run as a result of free competition.

Federal anti-trust laws involve different relevant product markets and market areas than those in proceedings under the Act. While "line make" is the relevant product market because it is so defined in the Board of Vehicle Act, such a product market is inappropriate under "anti-trust principles." Under federal anti-trust principles, the relevant product market would not be just Pontiac dealers, but all car lines with which Pontiac dealers compete. In this case, all dealers testified that they compete not only against other Pontiac dealers, but also against all other dealers' brands of automobiles, excluding some high-end makes. Moreover, the "relevant market area" of a twenty-mile radius as defined in Section 2 of the Board of Vehicle Act, 63 P.S. § 818.2, would not be the same for federal anti-trust purposes which utilize the actual trading area in a particular product market to determine the relevant market area. *See United States Department of Justice Merger Guidelines*, 49 Fed. Register 26823 (1984).

Even if the relevant market area and product lines were the same under federal anti-trust law and the Act, monopolistic effects are not defined by a gain in the market share, but rather by a lessening of competition. Cochran's acquisition of Bock and Walters can in no way be analogized to a horizontal merger, but if anything, is akin to a new entry into the market increasing competition, not lessening it.

## B. Closing of Oakdale Dealership

■ The Protesting Dealers argue that the Board erred in finding that Cochran's dealership in Oakdale would close if not relocated.[7] The Board found that because of its poor market condition, location and inadequate facilities, such a closure would be imminent. Because there is ample evidence on the record regarding this issue, we will not substi-

---

7. The evidence clearly shows that the dealership was not a factor in that market and had been moribund for a long time.

tute our judgment for that of a body selected for its expertise to weigh facts within its field. *Pennsylvania Social Services Union v. Pennsylvania Labor Relations Board,* 503 Pa. 236, 469 A.2d 150 (1983).

## C. Competitive Effects

The Protesting Dealers contend that the Board erred in finding that dealers were not selling an appreciable number of retail vehicles, and in failing to consider all relevant factors contained in Section 18(c) of the Act. Again, we have reviewed the Board's decision and find that they applied the standard correctly and the decision was supported by substantial evidence.

## D. Relevant Market Area

■ Section 2 of the Act, 63 P.S. § 818.2 defines "relevant market area" as "the area within a radius of twenty miles around *an existing dealer....* except that where a manufacturer is seeking to establish an additional new vehicle dealer, the relevant market area shall be in all instances, except for cities of the first and second class which will be the area within a five-mile radius, the area within a radius of ten miles around the *proposed site."* (Emphasis added.) The Board interpreted this provision to mean that the relevant market area in a dealer relocation was to be measured with the center of the radius at the proposed new location of the relocating dealer, in this case, from Cochran's proposed Robinson Township location. The Protesting Dealers argue that Cochran's Robinson Township location was not yet "an existing dealership" and the Board's interpretation is at variance with the express language of the Board of Vehicles Act. While we realize that great deference is to be given to the administrative agency's interpretation of a statute where it is charged with applying and enforcing that Act's provisions,[8] and even though in this instance, the Board's interpretation is logical

---

8. *See SmithKline Beckman v. Commonwealth,* 85 Pa. Commonwealth Ct. 437, 482 A.2d 1344, *affirmed per curiam,* 508 Pa. 359, 498 A.2d 374 (1984).

and solves some practical administrative problems, we find that this interpretation is at variance with the plain language of this provision.

The phrase "an existing dealer" is unambiguous. This phrase refers to a dealership already existing, not one which may exist at a "proposed site" dependent upon the Board's permission to allow the proposed relocation. Moreover, in the same sentence of the definition, the General Assembly, when setting the center of the radius to determine relevant market area for a new entry of a same line car dealer, specifically provided that the measurement was to be from "the proposed site" of the new dealership. Because the General Assembly used the term "an existing car dealership" and "proposed site" in the same sentence, we find that the General Assembly meant the terms to have different meanings. If the General Assembly wanted the measurement for the "relevant market area" to be from the "proposed site" rather than from "an existing dealership," the General Assembly knew how to express it.

Not only is this interpretation consistent with the plain language of the Act, it is also in accord with the intent of the General Assembly to protect the investment of an existing dealer and interests of consumers serviced by that dealer. By requiring the measurement of the relevant market area from an already existing dealership, the General Assembly was attempting to measure the impact or advantage of relocation on the existing dealer and consumers as measured from that existing dealer's location.

Because 63 P.S. § 818.18(b)(1) provides that this provision only becomes applicable if a dealer proposes to relocate within five miles of another dealer of the same line and make, we find that the center of the radius is to be drawn from an existing dealer within five miles of the proposed site.[9]

9. We agree with the Board that there can be only one relevant market. If there happens to be more than one dealer within five miles of where the dealer desires to locate, it is within the Board's power to

Accordingly, we remand to the Board with instructions to take additional evidence based on a relevant market area of a twenty-mile radius around G.V.M. Pontiac.

## ORDER

AND NOW, this 12th day of October, 1990, it is hereby ordered that the above-captioned matter is remanded to the State Board of Vehicle Manufacturers, Dealers and Salespersons for proceedings consistent with the accompanying opinion.

Jurisdiction relinquished.

adopt a method to determine one relevant market based upon the location of existing dealers within five miles of the proposed location.