Bernard J. WUJCIK, D.D.S., Appellant,

v.

YORKTOWNE DENTAL ASSOCIATES, INC., Appellee.

Superior Court of Pennsylvania.

Argued April 16, 1997.
Filed Aug. 29, 1997.
Reargument Denied Nov. 7, 1997.

Kristine A. Fritz, York, for appellant.

John W. Thompson, Jr., York, for appellee.

Before CAVANAUGH, POPOVICH and OLSZEWSKI, JJ.

POPOVICH, Judge.

This is an appeal from the order of the Court of Common Pleas of York County which denied appellant's motion for removal

of a compulsory nonsuit.[1] We reverse and remand for trial.

Herein, appellant raises the following assertions of error: 1) The lower court erred in granting the compulsory nonsuit before appellant presented his case in violation of Pa. R.C.P. 230.1; 2) The lower court erred in refusing to permit appellant to present evidence of his damages via an estimate of the dental industry average for collection of accounts receivable; 3) The lower court erred in refusing to permit appellant to present evidence in accordance with the pre-trial order of the Honorable Richard H. Horn; 4) The lower court erred when it refused to permit appellant to present evidence of his damages via his own testimony and that of Dr. John Johnesse, a principal of administrative clerk of the appellee-corporation. Upon review, we agree that the lower court should have permitted appellant to present evidence of his damages via his testimony and the testimony of representatives of appellee. However, we do reject appellant's claim that evidence of the dental industry average collection rate alone would be sufficient to prove his damages.

Before addressing the merits of appellant's appeal, a recitation of the history of this case is necessary. Appellant was employed for several years as a dentist by appellee. Although the parties had discussed a written employment contract, they could never agree to terms. Appellant provided dental services to appellee's patients based upon an oral agreement whereby appellant would receive thirty-five percent of the fees which were actually collected by appellee from those patients whom appellant treated. When appellant left the employ of appellee, two basic disputes arose. The first was whether appellant was entitled to receive his thirty-five percent of those fees for services which he rendered but which were collected after the date on which his employment ended. The second dispute concerned what the amount collected actually was and whether appellee was entitled to a set-off from that amount for certain expenses. Those disputes lead to this lawsuit which involves essentially the same issues.

A pre-trial conference was held in this matter before the Honorable Richard H. Horn. At this conference, appellant outlined his proposed method for proving damages. Appellant planned to testify that on the date his employment ended, he had generated $ 32,722.92 in accounts receivable. He also planned to testify that during his tenure, appellee normally collected 90% to 93% of the fees. Further, appellant proposed to offer, as proof of the amount collected by appellee, a survey from a dental trade magazine which stated that, on average, the nation's dentists collected 90% to 93% of their accounts receivable. Appellee objected to this method of proving the amount which it had actually collected. Unfortunately, the record is at best unclear what action if any Judge Horn took to resolve this issue. In his pre-trial order, Judge Horn, in pertinent part, stated:

> The [appellant] will testify as to the amount he has coming to him based on work performed.
>
> There is a question with respect to termination because not all of the accounts have been collected and Doctor Wujick will testify that approximately 90 to 93% of the accounts are collected. The proof will be received based upon a continuing course of conduct.

Pre-trial Order, filed Jan 30, 1996.

Subsequently, on the date scheduled for trial, the case was transferred to the Honorable John H. Chronister who held a brief pre-trial conference to become familiar with the case. Appellee provided the court with a trial memorandum in which it specifically objected to appellant's proposed method of proving damages.

Judge Chronister then informed appellant that his method of proving damages would fail as a matter of law because it was speculative. He was convinced that appellant needed to prove the actual amount which appellee had collected through the business records of

---

1. Where a court has entered a judgment of compulsory nonsuit, the appeal lies not from the entry of the judgment itself, but rather from the court's refusal to remove it. *Biddle v. Johnsonbaugh*, 444 Pa.Super. 450, 664 A.2d 159 (1995).

appellee. This information could have been easily obtained through discovery. However, appellant apparently chose to prove his damages via the survey from the dental trade magazine and his own recollection concerning the amount he usually received.

Appellant objected to Judge Chronister ruling on his offer of proof and claimed that Judge Horn had earlier approved of such a method. After much discussion, a review of Judge Horn's pre-trial order, and appellant's counsel's telephone conversation with Judge Horn, Judge Chronister concluded that Judge Horn had not ruled that appellant's offer of proof of damages was legally sufficient.

Appellant then requested a continuance in order to conduct discovery of appellee's business records. However, Judge Chronister denied appellant's request. As Judge Chronister noted in his Pa.R.App.P. 1925 opinion:

... this case was filed in 1992, and had been pending over four years. In 1995, the case was listed for termination for lack of docket activity for over two years. The case then proceeded through arbitration, and an appeal was filed. It is very obvious that if [appellant's] counsel was not prepared to prove his case, it wasn't because he didn't have sufficient time.

Opinion, pp. 5–6.[2]

Appellant then suggested that he be permitted to prove his damages through several witnesses for whom he had issued subpoenas, including Dr. John Johnesse, a principal of appellee, Dr. Arch Rizzo, a representative of appellee, and Lisa Grothouse, a former billing clerk of appellee. Appellant noted that these witnesses were present in court and could testify regarding the amount actually collected by appellee for services rendered by him. However, Judge Chronister again rejected appellant's argument, stating that appellant could not completely alter his method of proving damages immediately before trial. N.T., 4/1/96, p. 38. Further, Judge Chronister noted that those witnesses would not be able to testify regarding the exact amount collected. N.T., 4/1/96, pp. 38–

39, 41, 48, 49. Whereupon, Judge Chronister entered a nonsuit in favor of appellee and dismissed appellant's case. It is significant to note that appellant did not file a *subpoena decus tecum* for the production of appellee's relevant business records.

Appellant first claims that the lower court erred in granting the compulsory nonsuit before he presented his case in violation of Pa.R.C.P. 230.1, which, in pertinent part, provides: "In a case involving only one defendant, at the close of plaintiff's case on liability and before any evidence on behalf of the defendant has been introduced, the court, on the oral motion of a party, may enter a nonsuit if the plaintiff has failed to establish a right to relief."

■ Appellant is correct that a compulsory nonsuit is the proper way for a court to dismiss a plaintiff's case upon motion of the defendant *after the plaintiff has presented his evidence.* Pa.R.C.P. 230.1. *Lewis v. United Hospitals, Inc.,* 547 Pa. 626, ——– ——, 692 A.2d 1055, 1057–1058 (1997); *Gallagher v. Harleysville Mutual Insurance Company,* 421 Pa.Super. 192, 202, 617 A.2d 790, 796 (1992), *appeal denied,* 535 Pa. 620, 629 A.2d 1381 (1993). While we agree that entry of a compulsory nonsuit before trial is improper, we nevertheless are convinced that Judge Chronister had the authority to dismiss appellant's case prior to trial. As we have previously held, it is entirely appropriate for a trial judge, at a pre-trial conference, to decide issues of law based on admitted or undenied facts appearing of record. *Vogel v. Berkley,* 354 Pa.Super. 291, 295–297, 511 A.2d 878, 880 (1986) citing Pa.R.C.P. 212; *Hunt v. Com., Dept. of Transp.,* 137 Pa. Cmwlth. 588, 587 A.2d 37 (1991). Thus, Judge Chronister had the pre-trial authority to determine that appellant's offer of proof of damages was legally insufficient and to dismiss his cause of action. Of course, Judge Chronister should have treated appellee's objection to appellant's proposed method of proof as either a motion for summary judgment or for judgment on the pleadings. *Cf.,*

---

**2.** It is important to note that on appeal, appellant has not challenged the lower court's refusal to grant a continuance.

*Lewis, supra* (compulsory nonsuit granted before plaintiffs had opportunity to present evidence was error; court should have treated motion as either one for summary judgment or judgment on the pleadings; thus, a motion to remove the nonsuit was not necessary to perfect an appeal); *Gallagher, supra* (same).[3]

Having determined that the court's action was permissible (although not upon the procedural grounds provided by the court), we must next determine whether his legal decision was proper. We are convinced that the court correctly determined that appellant's initial offer of proof of damages was insufficient to sustain his cause of action. Appellant correctly asserts that "recovery will not be precluded simply because there is some uncertainty as to the precise amount of damages incurred." *Pugh v. Holmes,* 486 Pa. 272, 297, 405 A.2d 897 (1979). However, the law still requires a plaintiff to produce evidence which establishes, with a fair degree of probability, a basis for assessing damages. *Schoenenberger v. Hayman,* 77 Pa.Cmwlth. 411, 417–419, 465 A.2d 1335, 1339 (1983), *citing Exton Drive–In, Inc. v. Home Indemnity Company,* 436 Pa. 480, 261 A.2d 319 (1969). Herein, appellant proposed to prove his damages via an industry-wide average of collection of accounts receivable. Such an average collection percentage would be little more than pure speculation of the actual amount collected by appellee on those accounts generated by appellant's work. Appellant's proposed proof could not establish consequently, the court did not err when it rejected this method of proving damages, especially where, as in the present case, appellant, through discovery, could have obtained the records necessary to prove his damages with absolute certainty, but neglected to do so.[4]

Although we agree with Judge Chronister's conclusion that appellant's initial offer of proof was insufficient to prove his damages, we find that the lower court erred when it refused appellant's request to proceed to trial based on his "amended" offer of proof. As previously stated, appellant, in response to the court's ruling on his initial offer of proof, suggested that he could still sustain his burden of proof through his own testimony and the testimony of Dr. Johnesse, Dr. Rizzo and Ms. Grothouse. In a similar situation, we have held that a judge has the discretion to preclude a party from presenting the testimony of a witness where that party has violated a pre-trial conference order to disclose the identity of that witness prior to trial. *Gill v. McGraw Electric Co.,* 264 Pa.Super. 368, 380–83, 399 A.2d 1095, 1102–1103 (1979). However, the court's discretion is not unfettered, and we will reverse the lower court's decision where there has been an abuse of that discretion. *Gill,* 399 A.2d at 1102; *Curran v. Stradley, Ronon, Stevens & Young,* 361 Pa.Super. 17, 27–31, 521 A.2d 451, 456–457 (1987); *Walker Pontiac v. Dept. of State,* 136 Pa.Cmwlth. 54, 60–62, 582 A.2d 410, 414 (1990).

In determining whether the court properly exercised its discretion in precluding introduction of such evidence, we will consider: 1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; 2) the ability of that party to cure the prejudice; 3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case; and 4) the bad faith or wilfulness in failing to comply with the court's order. *Gill,* 264 Pa.Super. at 380–382, 399 A.2d at 1102 (collecting

---

3. We note that appellant also complains that Judge Chronister acted *sua sponte.* However, Judge Chronister's ruling was actually prompted by appellee's objection to appellant's proposed method of proving his damages in appellee's "trial memorandum."

4. Counsel for appellant indicated that his client did not want to *spend* an excessive amount on discovery as the value of his claim, approximately $11,000, did not warrant it. However, as

noted by the trial court, "This reasoning is hard to understand since it would have been quite simple for [appellant] to send [appellee] a simple interrogatory requesting that information. The work and effort that [appellant] feared would have fallen solely on the shoulders of [appellee]." Opinion, p. 2. We also note that the record indicates that those business records, albeit somewhat difficult to collect and collate in their present state, were available prior to trial.

cases); *Curran, supra; Walker Pontiac, supra.*

■ Presently, we are convinced that the lower court abused its discretion in dismissing appellant's case without permitting him to first present evidence of his damages through his, Dr. Johnese's, Dr. Rizzo's and Ms. Grothouse's testimony. All of these witnesses were listed as witnesses on his pretrial memorandum, and all were present in court. Both parties were well aware that the amount of fees collected was the primary issue in the case. Thus, appellee would not be surprised by the witnesses' testimony, especially where all three "surprise" witnesses are either principals in or former employees of appellee.

Most important to our decision is the equivocal nature of Judge Horn's pre-trial order which, in pertinent part, provided:

> The [appellant] will testify as to the amount he has coming to him based on work performed.

> There is a question with respect to termination because not all of the accounts have been collected and Doctor Wujick will testify that approximately 90 to 93% of the accounts are collected. The proof will be received based upon a continuing course of conduct.

It was not unreasonable for appellant to conclude from that order that he would be permitted to present his case and prove his damages based on his own testimony regarding the percentage of his accounts receivable which he usually was paid as compensation from appellee. While we render no decision herein on whether appellant's proof is legally sufficient, it is certainly conceivable that Dr. Johns, Dr. Rizzo and/or Ms. Grothouse, based upon their positions in appellee, would be able to testify regarding the amount of compensation due appellant. Likewise, it is equally possible that each would have no idea, without reviewing the applicable records, the amount due. Nevertheless, we are convinced that appellant should have been permitted to attempt to meet his burden of proof in this case, regardless of the court's assessment of his chances.

Herein, appellant did not change his manner of proof in an attempt to "surprise or prejudice" appellee, but rather did so in response to an eleventh-hour, pre-trial decision of the trial court. Consequently, we find that that appellant should have been permitted to present his evidence to the jury.

Order refusing to remove a compulsory nonsuit reversed. Case remanded for trial. Jurisdiction relinquished.