J-A09001-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ROBERT E. GILMORE AND ADELINE GILMORE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| v. | : | |
| | : | |
| BYRON C. PHILLIPS AND SARA S. PHILLIPS | : | No. 391 WDA 2023 |
| | : | |

Appeal from the Order Entered March 2, 2023
In the Court of Common Pleas of Washington County Civil Division at
No(s):  No. 2018-728

BEFORE:  DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.:                    **FILED: JUNE 21, 2024**

Appellants, Robert E. and Adeline Gilmore, appeal from the March 2, 2023 order entering a judgment of nonsuit in favor of Appellees, Byron C. and Sara S. Phillips, after Appellants failed to obtain an expert witness to testify that there was a causal relationship between Appellees' alleged negligence and Mr. Gilmore's injuries.  Appellants also challenge the March 2, 2023 order precluding them from offering as evidence the testimony and treatment records of Dr. Ari Pressman.  After careful review, we affirm.

The relevant facts and procedural history are as follows.  On October 13, 2017, Mr. Gilmore was attacked by Appellees' dogs while delivering flowers to Appellees' residence.

On February 8, 2018, Appellants filed a two-count negligence complaint against Appellees alleging that he had sustained injuries as a result of the dog

attack, that the attack was the proximate cause of his injuries, and that Appellees breached a duty to protect him from an obvious dangerous condition.[1] Appellees filed an answer to the complaint and new matter on March 27, 2018.

The case proceeded through discovery and the trial court set a trial date of July 19, 2022.

On June 14, 2022, Appellants filed a pretrial statement identifying Dr. Douglas Tice, Mr. Gilmore's treating physician, as Appellants' medical expert at trial. On June 21, 2022, the trial court, at the joint request of the parties, continued the trial date to October 25, 2022.

On October 7, 2022, Appellants filed a motion to continue the October 25, 2022 trial date indicating that they had been unable to schedule Dr. Tice's deposition. That same day, the trial court granted the motion to continue the trial until the February 2023 term and scheduled a pretrial conference for February 10, 2023.

On November 15, 2022, the trial court issued a new pretrial order establishing, *inter alia*, December 30, 2022, as the deadline for Appellants to provide Appellees with an expert report.

On December 30, 2022, Appellants filed a supplemental pretrial statement identifying Dr. Allan Tissenbaum, a doctor who first treated Mr.

---

[1] Appellants claimed that Mr. Gilmore sustained a posterior torn meniscus of his right knee, ACL/PCL strain of his right knee, and torn tendons of his right and left wrists as a result of the attack.

Gilmore's injury in September 2022, as their medical expert and attaching a September 23, 2022 treatment record prepared by Dr. Tissenbaum. On January 26, 2023, Appellees filed a motion in *limine* to preclude Appellants from presenting Dr. Tissenbaum as an expert witness.[2]

On February 1, 2023—more than one month after the deadline set by the trial court for Appellants to produce an expert report—Appellants filed a second supplemental pretrial statement identifying Dr. Ari Pressman, another of Mr. Gilmore's treating physicians, as Appellants' expert witness and attaching four sets of treatment notes prepared by Dr. Pressman.[3] The parties deposed Dr. Pressman on February 3, 2023.

On February 6, 2023, Appellees filed a motion in *limine* to preclude Dr. Pressman from testifying as an expert witness for Appellants. Appellees objected to Appellants' use of Dr. Pressman as an expert witness for two reasons: (1) because Appellants did not provide them with Dr. Pressman's treatment notes until after the court-imposed deadline for doing so, leaving their own expert no time to review the notes and offer a counter-report; and (2) because Appellants were offering Dr. Pressman as an expert witness, but

---

[2] This motion became moot when Dr. Tissenbaum declined to testify at the time of his January 25, 2023 deposition "due to the fact that Dr. Tissenbaum was unwilling to relate [Mr. Gilmore's] right knee diagnosis and surgery to the alleged events underlying this litigation." Motion in *Limine*, 2/6/23, at ¶ 10.

[3] Dr. Pressman's treatment notes indicate that he treated Mr. Gilmore on four occasions: April 6, 2018, October 25, 2019, November 22, 2019, and September 4, 2020.

Dr. Pressman did not prepare a report providing an expert opinion with respect to causation.

On February 10, 2023, the trial court held a pretrial conference at which the parties presented argument on the motions in *limine*. Relevant to the instant appeal, Appellees noted that Dr. Pressman first treated Mr. Gilmore for his injuries in April 2018, which was six months after the incident and two months after filing the instant lawsuit. Appellees argued that, even though Dr. Pressman did provide medical treatment to Mr. Gilmore, Dr. Pressman "crossed the threshold into being an expert for purposes of litigation[,]" and, thus, in order for Appellants to offer his testimony, Dr. Pressman must provide a causation opinion. N.T. Hr'g, 2/10/23, at 48. They also emphasized that Appellants had failed to comply with the court's order that Appellants provide Appellees with an expert report regarding causation of Mr. Gilmore's injuries by December 30, 2022, and instead had only provided them with four sets of treatment notes prepared by Dr. Pressman.

Appellants, implicitly conceding that the treatment notes did not constitute an expert report, argued that they intended to present Dr. Pressman as a non-expert treating physician witness who would offer only lay opinion testimony as to causation. They concluded, therefore, that Dr. Pressman was not required to prepare an expert report pursuant to Pa.R.Civ.P. 4003.5.

Following extensive argument by the parties, the trial court granted Appellees' motion in *limine* to preclude Appellants from offering the testimony

and/or treatment records of Dr. Pressman, finding that Dr. Pressman's treatment of Mr. Gilmore began after litigation commenced and his opinions were prepared for purposes of litigation. The court, therefore, concluded that Appellants sought to present Dr. Pressman's testimony as an expert witness and that, as such, Rule 4003.5 required Dr. Pressman to prepare an expert report, which Appellants conceded Dr. Pressman had not done at all, let alone by the expert report deadline.

In light of the trial court's ruling precluding Appellants from offering Dr. Pressman's testimony and records, Appellees made an oral motion for nonsuit. Appellees argued that without a medical expert, Appellants could not meet their burden of proof. The court granted the motion for nonsuit and dismissed Appellants' complaint.

This appeal followed. Both Appellants and the trial court complied with Pa.R.A.P. 1925.[4]

_____

[4] As a prefatory matter, we note the unique procedural posture of this case as an appeal from entry of nonsuit prior to the presentation of Appellants' case. A compulsory nonsuit is the proper way for a court to dismiss a plaintiff's case upon motion of the defendant **after** the plaintiff has presented his evidence. Entry of a compulsory nonsuit before trial is improper. *Lewis v. United Hosps. Inc.*, 692 A.2d 1055, 1057-58 (Pa. 1997) (compulsory nonsuit granted before plaintiffs had the opportunity to present evidence was error; court should have treated the motion for nonsuit as either one for summary judgment or judgment on the pleadings; thus, a motion to remove the nonsuit was not necessary to perfect an appeal). *See also Wujick v. Yorktowne Dental Assoc., Inc.*, 701 A.2d 581, 583-84 (Pa. Super. 1997) (noting that the trial court should have treated the defense objection to the plaintiff's offer of proof before trial as either summary judgment or a motion for judgment on the pleadings rather than as a motion for compulsory nonsuit); *Rivera v.*
*(Footnote Continued Next Page)*

Appellants present the following issues for this Court's review:

1. Whether the lower court erred in its grant of Appellees' oral motion for non[]suit, based on the exclusion of Dr. Pressman's proffered testimony and records on causation?

2. Whether the lower court erred in its grant of Appellees' [m]otion *in* [*l*]*imine* precluding the testimony of Dr. Ari Pressman and/or any records regarding the treatment provided by Dr. Pressman at trial of the case?

Appellants' Brief at 5 (reordered for ease of disposition).

**A.**

In their first issue, Appellants claim that, given the procedural posture of this case, the trial court "should have treated [Appellees'] oral motion for non[]suit as one for summary judgment." Appellants' Brief at 28. In support of this claim, Appellants cite to authority explaining that nonsuit is proper only after the plaintiff has presented his evidence. *Id.* at 29 (citing *Lewis v. United Hosps. Inc.,* 692 A.2d 1055 (Pa. 1997); *Wujick v. Yorktowne Dental Assocs., Inc.* 701 A.2d 581 (Pa. Super. 1997); *Rivera v. Home Depot*, 832 A.2d 487 (Pa. Super. 2003). Appellants have not, however, cited to any authority wherein this Court or our Supreme Court vacated a judgment of nonsuit merely because the trial court erroneously entered it—instead of

_____

*Home Depot*, 832 A.2d 487 (Pa. Super. 2003). In *Rivera*, this Court noted that while the "appropriate procedure after the entry of a compulsory nonsuit is to file a written motion for post-trial relief," a direct appeal from an improper "nonsuit" ruling is also permissible. *Id.* at 490.

Accordingly, even though the entry of nonsuit here was procedurally improper because Appellants had not yet presented their evidence, pursuant to *Rivera*, this appeal is proper and we proceed to address its merits.

summary judgment or judgment on the pleadings—pretrial. In fact, in each of the cases cited by Appellants the appellate court addressed the merits of the appeal notwithstanding the trial court's procedural error. **See**, **e.g.**, **Lewis**, 692 A.2d at 1058 (remanding the case to the Superior Court for consideration of the merits of appellants' appeal). Accordingly, Appellant is not entitled to relief on this claim.[5]

**B.**

In their second issue, Appellants claim that the trial court erred in precluding Dr. Pressman from testifying as a fact witness after determining that he developed his opinion as to the causal relationship between Mr. Gilmore's injuries and the incident giving rise to this lawsuit in anticipation of litigation and not as Mr. Gilmore's treating physician. Appellants' Brief at 14-27. Following our review of the record, we decline to address Appellants' claim because, in light of their failure to present expert testimony as to causation, even if the trial court erred, its error was harmless.

Generally, "[n]egligence is established by proving the following four elements: '(1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury;

---

[5] Moreover, Appellants have not claimed or presented any argument that the trial court erred in concluding on the merits that Appellants could not make out a *prima facie* case in the absence of expert testimony. In fact, Appellants "concede, as they must, that [expert] medical testimony was necessary to sustain the burden of proof." Appellants' Brief at 28.

and (4) actual damages.'" ***Grossman v. Barke***, 868 A.2d 561, 566 (Pa. Super. 2005) (citation omitted).

> In a personal injury case, the plaintiff must prove the existence of a causal relationship between the injury complained of and the alleged negligent act to be entitled to recover for the injury. Generally, **a plaintiff must prove causation by expert medical testimony**. There is an exception, however, where there is an obvious causal relationship between the two. An obvious causal relationship exists where the injuries are either an "immediate and direct" or the "natural and probable" result of the alleged negligent act. "The two must be 'so closely connected and so readily apparent that a layman could diagnose (except by guessing) the causal connection' . . . ."

***Lattanze v. Silverstrini***, 448 A.2d 605, 608 (Pa. Super. 1982) (emphasis added, citations omitted).

Here, Appellants concede that they were required to present expert medical testimony to sustain their burden of proof. ***See*** Appellants' Brief at 28. ("The question is not whether there was an obvious causal relationship between the injury and allegedly negligent act." Appellants "concede, as they must, that [expert] medical testimony was necessary to sustain the burden of proof."). It is undisputed that Appellants did not at any time obtain an expert medical witness who would testify that Mr. Gilmore's injuries were causally related to the instant incident. Thus, even if the trial court erred in characterizing Dr. Pressman as an expert witness and had instead permitted him to testify as a lay fact witness, Appellants would still not have an expert medical witness to testify that there was a causal relationship between Appellees' alleged negligence and Mr. Gilmore's knee and wrist injuries.

Accordingly, the trial court's error, if any, was harmless. ***See Commonwealth v. DeJesus***, 880 A.2d 608, 614 (Pa. 2005) ("an evidentiary error of the trial court will be deemed harmless on appeal where the appellate court is convinced, beyond a reasonable doubt, that the error could not have contributed to the [outcome of the case]"). Appellants are, thus, not entitled to relief on this claim.

**C.**

Having found both of Appellants' issues lacking merit, we affirm the entry of judgment in favor of Appellees.

Judgment affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 6/21/2024