J-S16021-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| VINCENT A. CIRILLO, JR. | : | |
| | : | |
| Appellant | : | No. 1044 EDA 2022 |

Appeal from the PCRA Order Entered April 13, 2022
In the Court of Common Pleas of Montgomery County
Criminal Division at CP-46-CR-0006500-2015

BEFORE:  DUBOW, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED JUNE 16, 2023**

Vincent A. Cirillo, Jr., (Appellant), appeals from the order denying his first petition filed under the Post Conviction Relief Act (PCRA).[1]  We affirm.

The trial court previously recited the underlying facts:

On August 3, 2015, A.U. arranged a meeting with [Appellant], her attorney, to discuss an upcoming court date in her ongoing custody cases.  …  The meeting was initially scheduled to take place at a restaurant; however, A.U. was running late and arranged, via text, to move the meeting to her home in West Norriton, Montgomery County.  When A.U. and her boyfriend arrived at the home, [Appellant] was waiting for them in the parking lot.  A.U. introduced her boyfriend, Paul Buckwalter, to [Appellant]; Mr. Buckwalter then returned to his own home to care for his children.  [Appellant] and A.U. went inside her home to discuss the matters in which he was representing her.

Approximately fifteen minutes later, A.U.'s father, Raymond, and his girlfriend, Stacey Julian, arrived at the home to visit with

---

[1] ***See*** 42 Pa.C.S.A. §§ 9541-9546.

[Appellant]. A.U., her father, his girlfriend, and [Appellant] sat in A.U.'s kitchen socializing. [The four began drinking alcohol. A.U. drank one bottle of beer.] … At some point …, A.U.'s father and his girlfriend left to ride [his] motorcycle. [Appellant] and A.U. resumed their discussion of her pending custody matters.

During the discussion, A.U. retrieved a bottle of vodka from the freezer. Her neighbor knocked on the door and asked for a drink. [A.U.] poured herself and her neighbor a glass of [] vodka and went outside to socialize with the neighbors. During the time she was outside, approximately thirty to sixty minutes, her neighbors noticed a drastic change in [A.U.'s] demeanor.

When Raymond and his girlfriend arrived back at the home, A.U. was highly intoxicated and slurring her words. After failed attempts to get his daughter to go inside and an argument with Ms. Julian, Raymond began to leave. Ms. Julian intended to stay at A.U.'s home. A.U. followed her father to the parking lot and fell into the bushes.

Her neighbor helped her up and walked her to her apartment …. Ms. Julian testified that she and [Appellant] helped A.U. up to her room. At this point, [Appellant] gave Ms. Julian $40 to secure drugs. Ms. Julian used A.U.'s phone and made several calls to her dealers between 10:02 p.m. and 10:14 p.m. When no one was able to come pick her up, she walked to the area of Chain and Lafayette Streets in Norristown, secured drugs[,] and went home.

With Ms. Julian gone, [Appellant] and A.U. were now alone in her bedroom. [Appellant], by his own admission, then performed oral sex on A.U., after which he claims she fell asleep. At this point, he took out his phone to photograph her. During a period of approximately twenty-five minutes, beginning at 10:25 p.m. and ending at 10:50, [Appellant] took six photos of A.U., in which she is clearly unconscious. In the final picture, [Appellant's] semen is visible on A.U.'s inner thigh and around her vagina. [Appellant] covered A.U. with a blanket and left the home.

Meanwhile, when he returned to his home, Raymond contacted A.U.'s boyfriend to express concern over her condition. Mr. Buckwalter returned to A.U.'s home to check on her around 11:35-11:40 p.m. and found A.U. unconscious in her bedroom, half naked. He attempted to wake her[] but was unable to do so. At this point he called [Appellant] and asked him what happened.

[Appellant] assured him that nothing happened between the two of them. Mr. Buckwalter eventually carried A.U. into the shower in an attempt to wake her. During this time, he took four photos to document the state in which he found her. He dressed her and took her to the hospital. At the hospital, she was unable to consent to testing and was not examined for signs of sexual assault at this point. They returned to Mr. Buckwalter's home.

Upon waking the next day, A.U. had no memory of the previous evening. She spoke to her boyfriend and father [to] determine what happened the previous night. On August 5, 2015, she called [Appellant] and explained she couldn't remember what happened and he told her "No memory is a good memory." He also told her that they had sex, and that she seemed pretty drunk, and that he did not check to see if she was breathing before he left. The next day, she went to police. On August 7, 2015, A.U. went to the hospital and was examined by Sexual Assault Nurse Examiner [(SANE)] Carrie Bell [(Nurse Bell)].

Trial Court Opinion, 11/8/17, at 1-4 (citations omitted).

On August 9, 2015, the Commonwealth charged Appellant with numerous crimes related to his assault of A.U. On October 4, 2016, Appellant entered an open guilty plea to one count of rape of an unconscious person.[2] On December 16, 2016, the scheduled sentencing date, Appellant orally moved to withdraw his guilty plea. The trial court granted Appellant's motion that day.

On February 6, 2017, a jury convicted Appellant of rape of an unconscious person, involuntary deviate sexual intercourse of an unconscious person, sexual assault, and unsworn falsification.[3] On April 8, 2017, the trial

_____

[2] *See* 18 Pa.C.S.A. § 3121(3).

[3] *See* 18 Pa.C.S.A. §§ 3123(a)(3), 3124.1, 4104.

- 3 -

court sentenced Appellant to an aggregate 10 to 30 years in prison. This Court affirmed Appellant's judgment of sentence, and on August 27, 2019, the Pennsylvania Supreme Court denied allowance of appeal. ***Commonwealth v. Cirillo***, 215 A.3d 641 (Pa. Super. 2019) (unpublished memorandum), ***appeal denied***, 217 A.3d 215 (Pa. 2019).

> Appellant filed a counseled PCRA petition on August 26, 2020.
>
> The Commonwealth filed an answer, to which [Appellant] replied. [The PCRA] court held a hearing on September 27, 2021, at which [Appellant] presented testimony from his trial counsel, Nino V. Tinari, Esquire [(trial counsel)]. At the conclusion of the hearing the parties were given an opportunity to file post-hearing briefs. In an order dated October 26, 2021, [the PCRA] court granted [Appellant] additional time to file a brief[] **but noted that the record was closed.**
>
> [Appellant] filed a supplemental brief on February 25, 2022, citing a recently obtained expert report. [The PCRA c]ourt denied the petition in an Order dated April 13, 2022, noting that it did not consider the untimely expert report….

PCRA Court Opinion, 6/23/22, at 2 (emphasis added). Thereafter, Appellant filed the instant timely appeal. The PCRA court and Appellant have complied with Pa.R.A.P. 1925.

> Appellant presents the following issues:
>
> A. [Whether] the trial court should have recused itself from the trial and PCRA proceedings[?]
>
> B. [Whether] trial counsel was ineffective for failing to object to Nurse Bell's improper expert testimony[?]
>
> C. [Whether] trial counsel was ineffective for failing to object to the admission of [Appellant's] extrajudicial statements based on the *corpus delicti* rule[?]

D. Should this Court review the "closely related crimes" exception to the *corpus delicti* rule and adopt the federal standard where the Commonwealth would be required to "introduce substantial independent evidence which would tend to establish the trustworthiness of the defendant's statement"[?]

Appellant's Brief at 4 (capitalization modified).[4]

Our review of a PCRA court's decision

is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party. With respect to the PCRA court's decision to deny a request for an evidentiary hearing, or to hold a limited evidentiary hearing, such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

*Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015) (citations and quotation marks omitted).

In his first issue, Appellant argues trial counsel rendered ineffective assistance in not seeking recusal of the trial judge. Appellant's Brief at 26-27. Appellant argues his claim has arguable merit because the same judge oversaw Appellant's guilty plea and its withdrawal. *Id.* at 26. Appellant asserts, without citing any evidence, that "the guilty plea loomed large in the

---

[4] We direct counsel's attention to Pa.R.A.P. 2116 (Statement of **Questions** Involved).

trial judge's mind as he presided over the trial, including [Appellant's] testimony in his own defense." ***Id.***

Appellant also claims bias and that "the trial court's wife's significant interest and work in representing and assisting alleged victims of sexual assault should have warranted recusal." ***Id.*** According to Appellant, the professional work of the trial judge's spouse "focuses largely on providing services to alleged victims of acquaintance rape, and the effects of sexual trauma." ***Id.*** at 27. Appellant asserts that the Code of Judicial Conduct demands recusal when a court's spouse "has more than a *de minimus* interest that could be substantially affected by the proceeding." ***Id.*** at 26-27 (quoting 207 Pa. Code § 2.11(a)(2)). Appellant claims these issues "factored heavily in the judge's sentencing decisions." ***Id.*** at 27.

Appellant maintains trial counsel had no reasonable basis for not seeking the trial judge's recusal. ***Id.*** In support, Appellant relies on the above claims of bias. ***Id.*** Appellant argues:

> If [trial] counsel were unsuccessful, [Appellant] would not have suffered any adverse consequences, as the trial court is presumed to harbor no ill will towards litigants for filing such a motion. There was thus no reasonable basis for counsel's failure.

***Id.*** Appellant asserts "prejudice is presumed based on [trial] counsel's failure." ***Id.*** Finally, Appellant claims:

> [A] party arguing for recusal need not prove that the judge's ruling actually prejudiced him; it is enough to prove that the reasonable observer might question the judge's impartiality.

*Id.* (quoting *Reilly v. Southeastern Pa. Transp. Auth.*, 479 A.2d 973, 980

(Pa. Super. 1984) (*Reilly I*), *aff'd in part and rev'd in part*, 489 A.2d 1291

(Pa. 1985) (*Reilly II*)).[5]

We are cognizant that counsel is presumed to be effective, and "the

burden of demonstrating ineffectiveness rests on [the] appellant."

*Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010).

> To satisfy this burden, an appellant must plead and prove by a
> preponderance of the evidence that: (1) his underlying claim is of
> arguable merit; (2) the particular course of conduct pursued by
> counsel did not have some reasonable basis designed to effectuate
> his interests; and, (3) but for counsel's ineffectiveness, there is a
> reasonable probability that the outcome of the challenged
> proceeding would have been different. Failure to satisfy any
> prong of the test will result in rejection of the appellant's
> ineffective assistance of counsel claim.

*Commonwealth v. Holt*, 175 A.3d 1014, 1018 (Pa. Super. 2017) (citations

and quotation marks omitted).

Prejudice is established where the truth-determining process was so

undermined that "no reliable adjudication of guilt or innocence could have

taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

> This does not mean a different outcome would have been more
> likely than not; a reasonable probability is a probability sufficient
> to undermine confidence in the outcome of the proceeding. Still,
> a speculative or attenuated possibility of a different outcome is
> insufficient to undermine confidence in the outcome.

*Commonwealth v. Jones*, 210 A.3d 1014, 1019 (Pa. 2019).

---

[5] *Reilly II* was overruled on other grounds in *Drake v. Pa. Nat. Mut. Cas. Ins. Co.*, 601 A.2d 797 (Pa. 1992).

Regarding Appellant's underlying claim,

[i]t is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially. In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion. In reviewing a denial of a disqualification motion, we recognize that our judges are honorable, fair and competent.

*Commonwealth v. Dip*, 221 A.3d 201, 206 (Pa. Super. 2019) (citation and quotation marks omitted).

Appellant is correct that to establish *arguable merit* in a recusal motion, the appearance of impropriety is sufficient for the grant of new proceedings. *See Commonwealth v. McFall*, 617 A.2d 707, 710 (Pa. 1992) ("although actual prejudice was not found, appellant was entitled to sentencing by a judge whose impartiality could not reasonably be questioned."). However, "arguable merit" is but *one prong* necessary to successfully establish ineffective assistance of counsel under the PCRA. *Holt*, 175 A.3d at 1018 (Pa. Super. 2017) (recognizing that the "[f]ailure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim."). The PCRA requires a petitioner to plead and prove by a preponderance of the evidence that counsel's ineffectiveness

caused him prejudice. *See id.* Here, Appellant failed to plead and prove the prejudice prong of his ineffectiveness claim or argue prejudice on appeal. *See* Appellant's Brief at 27-28 (arguing prejudice is not required for a successful recusal motion). Thus, Appellant's claim fails. *See Holt*, 175 A.3d at 1018.

Appellant also asserts the PCRA judge improperly denied his motion to recuse from PCRA proceedings. Our review discloses that Appellant filed a motion to the recuse the PCRA judge on August 8, 2020. Motion to Recuse, 8/8/20. Appellant sought recusal:

> 1) because [of the PCRA judge's] personal relationship and animosity toward both [Appellant] and his father; 2) because [the PCRA judge] presided over [Appellant's] withdrawn guilty plea and was biased by that information at trial; 3) because [the PCRA judge's wife's] significant interest and work representing and assisting alleged victims of sexual assault should have warranted recusal; and 4) because one of the primary issues in [Appellant's] Petition under the [PCRA] goes to trial counsel's ineffectiveness for not seeking a recusal.

PCRA Court Opinion, 2/9/21, at 1 (quotation marks omitted). The PCRA court denied Appellant's motion for recusal as (a) waived; and (b) without merit. *Id.* at 3-6.

In reviewing a recusal issue, "[o]ur function ... is to determine whether the proceedings before the PCRA court were fair and impartial." *Reilly II*, 489 A.2d at 1300. If the proceedings meet these criteria, the alleged disqualifying factors become moot. *Id.*

"A party that seeks recusal of a judge bears the burden to produce evidence establishing bias, prejudice, or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." ***Commonwealth v. Hutchinson***, 25 A.3d 277, 319 (Pa. 2011) (citations and quotation marks omitted). Notably, a judge's participation in a PCRA petitioner's underlying criminal action is generally not grounds for recusal in PCRA proceedings:

> Pennsylvania law makes clear that **it is generally preferable for the same judge who presided at trial to preside over the post-conviction proceedings**. Familiarity with the case will likely assist the proper administration of justice. Only where it is adequately demonstrated that the interests of justice warrant recusal, should a matter be assigned to a different judge.

***Commonwealth v. Lambert***, 765 A.2d 306, 362 (Pa. Super. 2000) (emphasis added, citations and quotation marks omitted); ***Hutchinson***, 25 A.3d at 319.

In denying Appellant's recusal motion, the PCRA court deemed the issue waived, explaining:

Courts conduct a waiver analysis because,

> litigants cannot be permitted to hedge against the possibility of losing a case on the merits by delaying the production of arguable grounds for disqualification, or, worse, by digging up such grounds only after learning of an adverse order. To hold otherwise would encourage judge-shopping, would undermine the interests in the finality of judicial decisions, and would countenance extensive and unnecessary expenditures of judicial resources, which are avoidable by mere timely advancement of the challenge. The courts of this Commonwealth cannot and do not approve of such gamesmanship.

[***League of Women Voters***, 179 A.3d 1080,] 1086 [(Pa. 2018);]
***Reilly*** [***II***], 489 A.2d [at] 1300 … (citation omitted) (stating,
"[o]nce the trial is completed with the entry of a verdict, a party
is deemed to have waived his right to have a judge disqualified,
and if he has waived that issue, he cannot be heard to complain
following an unfavorable result")….

[Appellant's m]otion is untimely and, thus, waived. As to
his first claim that the [c]ourt should recuse itself based on a
purportedly contentious relationship with [Appellant] and his
father, [Appellant] had knowledge of this well before his trial. In
fact, in his affidavit, he cites a 2014 incident which he alleges
shows th[e c]ourt was biased against him. He cites no specific
incidents relating to his father. In fact, [the c]ourt holds [his
father] in the highest regard and they always maintained a
collegial and amicable relationship. Thus, the alleged facts
underlying this first ground for recusal were known to [Appellant]
well before this matter commenced and failure to raise it earlier
constitutes waiver.

PCRA Court Opinion, 2/9/21, at 2-3.

The PCRA court further explained: "This [c]ourt presided over a jury

trial and was not the finder of fact in [Appellant's] trial. Adverse rulings alone

are insufficient to show bias and warrant recusal." ***Id.*** at 4 (citing

***Commonwealth v. Abu-Jamal***, 720 A.2d 79, 90 (Pa. 1998)).

The PCRA court further explained:

[Appellant] contends that this [c]ourt's spouse's work with
survivors of sexual assault somehow warrants recusal. … [T]his
claim is waived for failure to raise it in a timely manner. In his
brief on direct appeal, [Appellant] referenced [the judge's
spouse's] 2012 dissertation, which was written nearly four years
before [Appellant's] trial. This information could have been
discovered through an exercise in due diligence. Even if this claim
were not waived, it would not warrant recusal. This [c]ourt's
spouse had no interest in the outcome of this trial, did not counsel
[A.U.] and has no input into th[e c]ourt's judicial work.

PCRA Court Opinion, 2/9/21 at 4.

- 11 -

Finally, the PCRA court found:

[E]ven if [Appellant] had timely raised the issue, there is no merit to any of his claims as to warrant recusal. … [Appellant] alleges no evidence of bias or prejudice. Instead, in his [m]otion and supporting [m]emorandum of [l]aw, he asserts only that [the c]ourt knew his father and was at times a political rival. This blanket statement does not specify any incident or a relationship that would require recusal. Likewise, he alleges [the c]ourt reprimanded him for tardy court appearances. Again, assuming this were true, as this [c]ourt has no recollection of the alleged exchange, this again shows no bias against [Appellant]. Likewise, this [c]ourt's spouse's occupation had no effect on this case, or any other case before this [c]ourt. Therefore, counsel cannot be ineffective for failing to raise a meritless claim at an earlier stage of the proceedings….

*Id.* at 5-6. The record supports the PCRA court's findings and its legal conclusions are sound. Thus, Appellant's first issue does not merit relief. *See id.* at 3-6.

In his second issue, Appellant argues trial counsel rendered ineffective assistance by not objecting to the "improper expert testimony" of Nurse Bell. Appellant's Brief at 28 (capitalization omitted). Appellant claims trial counsel should have requested a *Frye*[6] hearing "to challenge both Nurse Bell's qualifications and the general acceptance of any *scientific* basis for her purported expert conclusions." *Id.* at 31 (emphasis in original). According to Appellant,

the record is devoid of any reason to think [Nurse Bell's] so-called expert testimony about traits that were "not uncommon for victims of sexual assault" to exhibit, was the product of any reasoned scientific methodology. Indeed the witness testified

---

[6] *See Frye v. Unite States*, 293 F. 1013 (D.C. Cir. 1923).

about her conclusions concerning "common" traits in sexual assault cases, and obliquely referenced multiple "studies" without providing any scientific methodology that she had employed.

*Id.* at 32 (citation omitted). Appellant asserts there is no reason to think a "scientific consensus" exists about common traits for sexual assault victims. *Id.* Further, "There is likely *no* general acceptance in the medical community of what behavior a *typical* victim will exhibit." *Id.* (emphasis in original).

Appellant contends trial counsel had no reasonable basis for waiving a *Frye* hearing. *Id.* Appellant asserts he suffered prejudice resulting from Nurse Bell's references to "official-sounding" studies and statistics about what is "common in cases of sexual assault[,]" without presenting the methods or findings of these studies. *Id.* at 33.

Preliminarily, we examine whether Appellant preserved these claims as prescribed by Pennsylvania Rule of Appellate Procedure 1925(b). *See Commonwealth v. Kearney*, 92 A.3d 51, 59 (Pa. Super. 2014) (reaffirming bright-line rule of *Commonwealth v. Lord*, 553 719 A.2d 306 (Pa. 1998), and requiring appellants to comply with trial court's order to file a Rule 1925(b) statement). "Any issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived." *Lord*, 553 A.2d at 309.

In his Pa.R.A.P. 1925(b) concise statement, Appellant stated, in relevant part:

3. Petitioner's trial counsel provided ineffective assistance because, regarding the testimony of the SANE nurse, he: i. failed to object to improper expert testimony; ii. [] stipulate[ed] to the admission of the testimony; iii. and failed to hire his own expert

- 13 -

on the same subject to rebut the testimony of the Commonwealth's SANE nurse.

4. Should the PCRA Court have granted an evidentiary hearing on the above issues pertaining to the SANE nurse (see #3 supra) to learn why trial counsel did not object to the testimony, stipulated to the Commonwealth's admission of the nurse's testimony, or hired his own expert.

Concise Statement, 5/10/22, ¶¶ 3-4.

The PCRA court determined Appellant waived his ineffectiveness claim regarding Nurse Bell's testimony:

[Appellant] raised before this court several instances where he believes trial counsel allowed Nurse Bell to offer improper expert testimony. **He does not identify with any specificity in his concise statement, however, what the alleged improper expert testimony was.** The issue in paragraph 3(i) of [Appellant's] concise statement should be deemed waived.

PCRA Court Opinion, 6/23/22, at 6. We agree with the PCRA court.

Our review discloses that in his PCRA petition, Appellant alleged multiple instances where trial counsel should have objected to statements by Nurse Bell. For example, Appellant claimed trial counsel rendered ineffective assistance by stipulating to Nurse Bell's "expertise in the areas of anatomy and sexual assault nurse examinations." PCRA Petition, 8/26/20, ¶ 16. Appellant also claimed counsel should have objected to Nurse Bell's report, prepared after her examination of A.U. *Id.* ¶ 17. Appellant asserts counsel should have objected to Nurse Bell's testimony that

the "victim was tearful … [it] is not uncommon for victims of sexual assault to come into the ER and be distraught or tearful or anxious." Nurse Bell also said that the "victim did not have a memory of the events."

- 14 -

*Id.* ¶ 18 (citations omitted).  According to Appellant, Nurse Bell improperly testified, without objection,

> that her opinions about the lack of physical findings of sexual assault bearing on the veracity of a complaint were "consistent with [her] training and experience in conducting SANE examinations."

*Id.* ¶ 19 (citation omitted).  Appellant claimed counsel should have objected to Nurse Bell's opinion testimony that A.U. had

> come in too late for the damage to be discovered, was likely too young to display injuries, and that if she was "intoxicated at the time of incident, whether it be drug-facilitated or alcohol, that … has a relaxing effect on the muscles.  And when you're not fighting back, you oftentimes have less bodily injury."

*Id.* ¶ 20.

The record confirms the PCRA court's determination that Appellant, in his concise statement, failed to identify the testimony underlying his claim of counsel's ineffectiveness.  *See* PCRA Court Opinion, 6/23/22, at 6.  Thus, Appellant waived his claims regarding trial counsel's failure to object to statements by Nurse Bell.  *See Kearney*, 92 A.3d at 59.

In the absence of waiver, Appellant's argument would lack merit. Appellant claims trial counsel rendered ineffective assistance by not challenging Nurse Bell's qualifications and testimony without a *Frye* hearing. Appellant's Brief at 31.  In arguing a *Frye* hearing was necessary, Appellant ignores the Legislature's enactment of 42 Pa.C.S.A. § 9520, which governs

expert testimony in criminal cases where the defendant is charged with sexual offenses:

Qualifications and use of experts.

(1) In a criminal proceeding subject to this section, a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence, that will assist the trier of fact in understanding the dynamics of sexual violence, victim responses to sexual violence and the impact of sexual violence on victims during and after being assaulted.

(2) If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors.

(3) The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible.

(4) A witness qualified by the court as an expert under this section may be called by the attorney for the Commonwealth or the defendant to provide the expert testimony.

42 Pa.C.S.A. § 9520(b). Section 5920

explicitly provides that a properly qualified expert may testify to facts and opinions regarding specific types of victim responses and behaviors in certain criminal proceedings involving sexual assaults, provided experts do not offer opinions regarding the credibility of any witness, including the victim.

***Commonwealth v. Williams***, 274 A.3d 722, 279 (Pa. Super. 2022) (citation omitted). Appellant's claim that trial counsel should have sought a ***Frye*** hearing regarding Nurse Bell's testimony lacks arguable merit, as it is negated by Section 9520(b). ***See Holt***, 175 A.3d at 1018.

Appellant also argues trial counsel should have objected to Nurse Bell's lack of expert qualifications on the basis that she had no continuing education or scientific evidence to support her findings. Appellant's Brief at 37. Appellant did not preserve this issue.

In his Pa.R.A.P. 1925(b) concise statement, Appellant asserted trial counsel rendered ineffective assistance by not objecting to "improper expert testimony[,]" and for "stipulating to the admission of the testimony[.]" Concise Statement, 5/10/22, ¶ 3(i)-(ii). The PCRA court rejected the assertion, stating: "Trial counsel did not stipulate to the admission of Nurse Bell's testimony; he stipulated to her qualifications. (N.T., 2/10/17, p. 6)." PCRA Court Opinion, 6/23/22, at 7. Appellant now argues trial counsel was ineffective for stipulating to Nurse Bell's qualifications. Appellant's Brief at 37. Appellant waived this issue because he did not include it in his Rule 1925(b) concise statement. *See Kearney*, 92 A.3d at 59.

> Regardless, the PCRA court recognized trial counsel
>
> raised several objections during [Nurse Bell's] testimony and engaged in extensive cross-examination of Nurse Bell. He testified at the PCRA hearing to a reasonable basis for this approach. (N.T., 9/27/21, pp. 5-9, 22-23)
>
> [Appellant], conversely, did not present evidence at the PCRA hearing demonstrating that an alternative approach to challenging Nurse Bell's testimony would have been successful….

PCRA Court Opinion, 6/23/22, at 7. As Appellant failed to prove trial counsel lacked a reasonable basis for his strategy and prejudice resulted, his

ineffectiveness claim based on Nurse Bell's expert testimony fails. ***See Holt***,

175 A.3d at 1018.

Appellant also argues trial counsel was ineffective for not rebutting

Nurse Bell's testimony with an expert witness. Appellant's Brief at 37.

Appellant relies on an expert report from Tristan Ashly Wristen, (Nurse

Wristen). ***Id.*** According to Appellant,

> had trial counsel engaged in competent representation, then not
> only would he have objected to Nurse Bell's testimony, he would
> have thoroughly refuted it. Nurse Wristen's contrary account
> would have been devastating to the Commonwealth's case, and
> prevented the jury from improperly relying on Nurse Bell's wholly
> unscientific claims. This error likely prejudiced [Appellant].

***Id.*** at 38.

> The PCRA court explained its rejection of this issue:
>
> [Appellant] did not present evidence at the PCRA hearing proving
> trial counsel was ineffective for not retaining a rebuttal expert.
> [Appellant] had a full PCRA hearing, at which he presented only
> the testimony of trial counsel. **While [Appellant] subsequently
> may have produced a purported expert report in February
> 2022 as part of his post-hearing brief, this occurred months
> after the hearing and despite [the PCRA court] having
> made clear in the Order of October 26, 2021, that the
> record was closed.** As such, [Appellant] did not carry his burden
> of proving trial counsel rendered ineffective assistance as it relates
> to Nurse Bell.

PCRA Court Opinion, 6/23/22, at 7 (emphasis added). The record supports

the PCRA court's findings and we discern no error or abuse of discretion.

Appellant argues next trial counsel rendered ineffective assistance by

failing to object to the admission of Appellant's confession and violating the

*corpus delicti* rule. Appellant's Brief at 41-42. Appellant states:

> Trial counsel never objected to the introduction of [Appellant's] confession as lacking independent evidence that any crime had occurred, yet the *corpus delicti* rule should have precluded admission of his confession. Because this error caused prejudice, [Appellant] is entitled to a new trial[.]

*Id.* at 42.

Appellant does not identify his confession. It appears he is challenging A.U.'s testimony about Appellant's statement to her the day after the assault. A.U. testified she telephoned Appellant the next day and asked what had happened the previous night. N.T., 2/7/17, at 249. A.U. stated that Appellant told her "everything was good and that **we had sex**." *Id.* at 250 (emphasis added). Appellant did not object to this testimony. *See id.* In a recorded interview with police, Appellant relayed that he had oral sex with A.U. *See* N.T., 2/10/17, at 28-29, 141 (testimony of Montgomery County Police Detective Christopher Kuklentz quoting Appellant's recorded interview).

Appellant argues there was no "independent evidence that a crime has in fact been committed[.]" Appellant's Brief at 42. Appellant acknowledges that photographs from his phone could suggest criminal activity, but "hardly prove" that a crime occurred. *Id.* Appellant also acknowledges the photographs show A.U. in a state of undress, with semen on her thigh. *Id.* However, he claims "[t]here is nothing inherently unlawful about such a picture or about the conduct depicted in that photograph." *Id.* (emphasis omitted). Appellant posits that even if the photographs "cleared the

Commonwealth's initial burden of admissibility, the jury still would have been required to consider the *corpus delicti* rule." *Id.* at 43.

Appellant asserts trial counsel had no reasonable basis for not objecting. *Id.* He claims if trial counsel successfully objected, there would have been no evidence of his penetration of A.U. *Id.* Appellant contends that counsel's omission prejudiced Appellant, because without proof of penetration, he would not have been convicted of rape. *Id.*

"The *corpus delicti* rule involves the admissibility of evidence, which we review for an abuse of discretion." *Commonwealth v. Murray*, 174 A.3d 1147, 1154 (Pa. Super. 2017).

> "The *corpus* [*delicti*] … rule places the burden on the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted." [*Commonwealth v. Dupre*, 866 A.2d 1089, 1097 (Pa. Super. 2005)] (quoting *Commonwealth v. Rivera*, 828 A.2d 1094, 1103 (Pa. Super. 2003)). "The Commonwealth need not prove the existence of a crime beyond a reasonable doubt as an element in establishing the *corpus delicti* of a crime, but the evidence must be more consistent with a crime than with [an] accident." *Id.* at 1098. The *corpus delicti*, or "body of the crime," may be proven by circumstantial evidence. *Commonwealth v. Hogans*, 400 Pa. Super. 606, 584 A.2d 347, 349 (Pa. Super. 1990).

*Id.*

> Further:

> Establishing the *corpus delicti* in Pennsylvania is a two-step process. The first step concerns the trial judge's admission of the accused's statements and the second step concerns the fact finder's consideration of those statements. In order for the statement to be admitted, the Commonwealth must prove the *corpus delicti* by a preponderance of the evidence. In order

- 20 -

for the statement to be considered by the fact finder, the Commonwealth mut establish the *corpus delicti* beyond a reasonable doubt.

*Id.* at 1154 (quoting **Commonwealth v. Young**, 904 A.2d 947, 956 (Pa. Super. 2006)).

Our Supreme Court has recognized a "closely related crime" exception to the *corpus delicti* rule:

[W]here a defendant's confession relates to two separate crimes with which he is charged, and where independent evidence establishes the *corpus delicti* of only one of those crimes, the confession may be admissible as evidence of the commission of the other crime. This will be the case only where the relationship between the two crimes is sufficiently close to ensure that the policies underlying the *corpus delicti* rule are not violated.

**Commonwealth v. Fears**, 836 A.2d 52, 67 (Pa. 2003).

Pertinently, Appellant was charged with sexual assault, rape of an unconscious person and IDSI. A person commits the crime of sexual assault

when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent.

18 Pa.C.S.A. § 3124.1. A person commits the crime of rape

when the person engages in sexual intercourse with a complainant … [w]ho is unconscious or where the complainant is unaware that the sexual intercourse is occurring[.]

*Id.* § 3121(a)(3). A person commits the crime of IDSI

when the person engages in deviate sexual intercourse with a complainant … who is unconscious or where the person knows that the complainant is unaware that the sexual intercourse is occurring[.]

*Id.* § 3123(a)(3). Deviate sexual intercourse is defined as "[s]exual intercourse *per os* or per anus between human beings[.]" *Id.* § 3101.

At trial, the Commonwealth first presented evidence of A.U.'s intoxication the evening of August 4, 2015. N.T., 2/7/17, at 125-26, 129, 132. Neighbors, A.U.'s father, and her father's girlfriend confirmed that A.U. was highly intoxicated. *See* N.T., 2/7/17, at 143-45, 191-93, 206; N.T., 2/8/17, at 13-15, 22-26, 40-45, 98-100, 126-291.

The Commonwealth also introduced photographs of A.U. *taken by Appellant* that night. This Court previously observed: "A.U. is clearly unconscious in the photographs." *Cirillo*, (unpublished memorandum at 27). "In each of the photographs her head is in the same position, indicating that she has not moved." *Id.* "In the first two photographs [A.U.] is on her back with her legs open." *Id.* In one photograph, "semen is visible both on [A.U.'s] thigh **and around her vagina and on her G-string**." *Id.* at 28 (emphasis added).

The PCRA court found trial counsel had a reasonable basis for not pursuing a *corpus delicti* rule violation:

> [T]he offenses [of] which Appellant was found guilty bear a close relationship and the policy underlying the exception was not offended by admission of his statements. As such, [Appellant] failed to demonstrate arguable merit in connection with his *corpus delicti* claim. Moreover, trial counsel testified credibly on direct examination at the PCRA hearing that he is familiar with the *corpus delicti* rule and that he did not believe it was an issue:
>
> > A. [Trial counsel:] [T]here was sufficient evidence other than a slip of the tongue that it wasn't just a naked

confession on his part. It was there was delayed information that was garnered at the time and as a result of … [Appellant] taking pictures himself of the complainant. In my view, there was not a real issue concerning the *corpus delicti* argument.

(N.T., 9/27/21, pp. 14-15) [Trial counsel] further testified credibly on cross-examination:

Q. I just want to talk about the *corpus delicti* claim that the defendant was raising. Is it fair to say that in determining not to raise a *corpus delicti* objection that you looked at the entirety of the evidence to determine whether that type of objection would have merit?

A. [Trial counsel:] Yes, that's correct. We went through all of the discovery and conversations with [Appellant]. The issue concerning *corpus delicti* really didn't become one of major importance at this point.

*Id.* at p. 21. **This testimony makes clear that [Appellant's] experienced trial counsel had a reasonable basis for not raising a *corpus delicti* challenge.** As such, in addition to failing to prove his *corpus delicti* claim has arguable merit, [Appellant] also did not demonstrate trial counsel's strategy lacked a reasonable basis…

PCRA Court Opinion, 6/23/22, at 11 (emphasis added).

Because the PCRA court found counsel had a reasonable basis for not pursuing a *corpus delicti* claim, and its finding is supported in the record, this ineffectiveness claim merits no relief. ***See Holt***, 175 A.3d at 1018; ***see also Commonwealth v. Lesko***, 15 A.3d 345, 380 (Pa. 2011) ("Generally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests."); ***Commonwealth v. Puksar***, 951 A.2d 267, 277 (Pa. 2008) ("A claim of

ineffectiveness cannot succeed through comparing, in hindsight, the trial strategy employed with alternatives not pursued.").

Finally, Appellant asks this Court to revisit the closely related crime exception to the *corpus delicti* rule. Appellant's Brief at 44. Appellant argues we should accept the federal *corpus delicti* standard. **Id.** As an intermediate appellate court, we "generally lack[] the authority to determine that [the Supreme] Court's decisions are no longer controlling." ***Walnut Street Associates, Inc. v. Brokerage Concepts, Inc.***, 20 A.3d 468, 480 (Pa. 2011) (citing ***Commonwealth v. Jones***, 554 A.2d 50, 51 (Pa. 1989)). Instead, we "are duty bound to effectuate [the Supreme] Court's decisional law." **Id.** Consequently, Appellant's request does not merit relief.

Order affirmed.

Judge McCaffery concurs in the result.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/16/2023